## Richmond

SETH DABNEY MacKENZIE, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 0105-87-2

Decided May 16, 1989

COUNSEL

Blair D. Howard (Howard & Howard, P.C., on brief), for appellant.

Virginia B. Theisen, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

BAKER, J.—Seth Dabney MacKenzie, Jr. (appellant) appeals judgments of the Circuit Court of Henrico County (trial court) which affirmed his jury convictions for sodomy, statutory rape, aggravated sexual battery, and taking indecent liberties with a minor. He assigns as error the failure of the trial judge to sustain his motion to dismiss the charges on double jeopardy and collateral estoppel grounds or, in the alternative, the failure to sustain his motion for a new trial on the ground that his due process rights had been violated. We will state the case and facts separately as applicable to the errors alleged. Appellant does not claim that the evidence was insufficient; therefore, we will recite only facts necessary to an explanation of the issues presented on his appeal.

Appellant is the step-father of the victim. She was born on April 12, 1971. The offenses were alleged to have occurred between April 1984 and December 1984 in the counties of Henrico, Chesterfield and Goochland. Appellant was charged and indicted in Henrico and Chesterfield. The first trial, which was begun in Henrico, ended before the opening statements were completed when the trial court sustained appellant's motion for a mistrial based on several improper statements made by the prosecutor to the jury.

In her opening statement the prosecutor called the jury's attention to the "incredible facts" of certain Nazi atrocities. She remarked that it was not until the ovens were opened, revealing bodies stacked one on the other, that "the world was forced to believe the unbelievable." Appellant objected, the jury was excluded, and the trial court asked if he had a motion. At that stage, appellant declined to move for mistrial, saying, "I want to try this case."

The prosecutor was admonished by the court to tell the jury only what she expected to prove and refrain from argument during her opening statement. The record discloses that she did not abide by the court's ruling. When she resumed, her remarks were argumentative and the trial court interrupted her, advising that if she kept "arguing the case" it was going to "cut [her] off." After this warning she proceeded to outline the case she would present and in conclusion made the following statement:

[I]t will be the job of Mr. Howard (defendant's counsel) right here to convince you that she (the victim) is not telling the truth. He will do that in a number of ways. He's a good defense attorney. Expect him to employ every legal maneuver, every trick, everything he knows to do. That's his job, and we respect him for that.

At that point, appellant moved for, and over the strong objection of the prosecutor, was granted a mistrial.

Subsequently, the matter was again set for trial. Prior to that trial date, appellant filed written pleas asserting that a second trial in Henrico was barred by principles of double jeopardy and collateral estoppel.

### Collateral Estoppel

Appellant's collateral estoppel plea was based on an argument that, between the mistrial in Henrico and the day of his motion, he had been tried and acquitted in Chesterfield on the same charges, with substantially the same evidence, as was alleged to have occurred in Henrico. "The party seeking the protection of collateral estoppel carries the burden of showing that the verdict in the prior action necessarily decided the precise issue he seeks to now preclude." *Rogers v. Commonwealth*, 5 Va. App. 337, 341, 362 S.E.2d 752, 755 (1987). Based upon our examination of the record of the Chesterfield proceedings, we conclude that the verdict could have been based on a ground other than that which appellant seeks to foreclose from further consideration. Based on this record, the jury may well have concluded that the offenses occurred, but not in Chesterfield County. As the trial court said in its August 1, 1986 letter, the Commonwealth may not prosecute a defendant in Chesterfield for crimes alleged to have occurred in Henrico, and vice versa. Accordingly, we affirm the trial court's ruling on the issue of collateral estoppel.

### Double Jeopardy

Appellant's double jeopardy plea was founded on the principle of prosecutorial misconduct which caused him to request a mistrial. In appellant's oral argument before us he conceded that his motion concerning double jeopardy was controlled by *Oregon v. Kennedy*, 456 U.S. 667 (1982). We agree. We must determine

whether the double jeopardy clause of the fifth amendment, as made applicable to the States by the fourteenth amendment, bars further prosecution of the Henrico cases because the prosecutor intentionally caused appellant to move for a mistrial. We find that the record does not support that contention.

In its letter dated August 1, 1986, the trial court found that the Commonwealth Attorney did not exercise good judgment in her remarks; that the remarks should not have been made in an opening statement; and that they were prejudicial to appellant. There was no finding of intent to cause a mistrial.

■ The standard applied in *Kennedy* is that prosecutorial conduct, even if viewed as harassment or overreaching and sufficient to justify a mistrial, does not bar retrial absent proof of intent on the part of the prosecutor to subvert the protections afforded by the double jeopardy clause. *Id.* at 675-76.

Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

*Id.* at 676. Applying the stated rule to this record we affirm the finding of the trial court on the issue of double jeopardy.

### Motion for New Trial

Prior to the first Henrico trial which ended in mistrial appellant filed a written motion requesting any prior inconsistent statements made by witnesses that the Commonwealth intended to call at trial. Subsequent to the mistrial, but prior to the trial from which this appeal emanates, appellant was tried and acquitted in Chesterfield on indictments for offenses alleged to have occurred in that county and which were similar to those involved in this appeal.

As a part of the Commonwealth's Henrico case, Denise Lewis was called to testify. Lewis had not appeared in the Chesterfield case. She was an employee of a film developing company and had personally developed film for appellant's business, MacKenzie Roofing. Lewis became familiar with appellant as a customer and identified him in court. She had developed some film for

MacKenzie Roofing, depicting roofs, buildings and people working; however, she also developed two sets of pictures depicting the victim clothed in a costume. These pictures were admitted into evidence by agreement. When Lewis was asked by the prosecutor whether there came a time "where some of the film he [appellant] brought in was different from the normal film," appellant objected and the jury and witness were excluded. The prosecutor advised the trial court that the witness would testify that she remembered a third set of pictures in sequence with the other two which were nude pictures[1] of the same little girl [victim] depicted in the other two sets that had been admitted by agreement. Appellant objected, advising the trial court that in response to his production motion he had been advised of the two sets in evidence, but was not advised of a third set. Moreover, he argued that unless she could identify who took the pictures she should not be permitted to describe them. When the trial court inquired as to why the prosecutor had not advised appellant of the third set, she replied that she was not obligated to because there was nothing exculpatory about Lewis' memory.[2] The trial court sustained appellant's objection because Lewis could not identify the person who had taken the pictures contained in the third set and because it was agreed that the pictures, if any, had been taken in Goochland. Hence, they would have no relevancy to the cases being tried. Without success, the prosecutor vigorously sought to persuade the trial court to change its ruling. The court, after repeatedly and patiently reminding the prosecutor that it had made its decision, finally firmly said: "I told you that I had ruled on that point and I'm not going to go through that again."

Although not supported by any evidence in the record appellant asserts that Lewis was not known to appellant or his counsel. The record does disclose a clear statement that Lewis knew appellant and made an in-court identification of him. In the Chesterfield trial appellant testified on his own behalf, denied the allegations made by the victim, and was acquitted by a jury. In the second Henrico trial appellant did not testify. The record before us does not disclose appellant's thought process in declining to testify in Henrico; however, his counsel argues that he fully intended to

---

[1] In both the Chesterfield and second Henrico trials, the victim testified that appellant had taken pictures of her while she was nude.

[2] None of the pictures alleged to be in the third set had been found.

have appellant testify as he had in Chesterfield, but after hearing the prosecutor's representation to the trial court concerning what she expected Lewis to relate, he strongly advised appellant to forego that right. To bring the issue before us in clear focus we recite here the statement made by appellant's counsel to us in oral argument:

> And this is really the crux of this appeal — I fully intended to put Mr. MacKenzie on that stand. And I fully intended him to do the same thing as I did down in Chesterfield — and I submit to you all what reason in the world would I be possessed to change my trial strategy on something that had worked when a jury had evaluated his testimony against the victim's in Chesterfield — but knowing the representation of the prosecuting attorney I then said to my client there is no way I can put you on the stand because if you get on the stand you got not only the sex but you got to deny taking these pictures and as soon as you do that in cross-examination they ask you where do you take pictures to be developed. I said you open the door and that lady comes right back in here and you are dead — there's no way that you can overcome that. She's a young girl — she doesn't know you she doesn't know anybody she comes in here *and she's going to testify to what she developed* — you're dead! And this case is lost . . . it wasn't fair because I didn't know what in fact was the truth. The information given to that, to that judge and me in the middle of the trial was misinformation, misled me and led me into concluding that we couldn't go forward with the original strategy.

Counsel's reference to "misinformation" is based on a discovery made after trial that one of the investigating officers, Gregory Auditore, had notes which indicated that in July 1985 Lewis had told him that she had developed film brought in by someone from MacKenzie Roofing which showed a faceless nude female whom she could not identify.[3] When testifying at a post-trial hearing Lewis denied that she had made the inconsistent statement appearing in Auditore's notes, and we find nothing in the transcript to support the assertion that Lewis admitted making a statement

---

[3] This assertion contained in Auditore's notes appears to contradict the prosecutor's proffer that Lewis would testify that the person depicted in the photographs was the victim.

inconsistent with the prosecutor's representation as to the testimony she expected Lewis to relate.

In his brief, appellant asserts that the Commonwealth stipulated that Lewis had made a prior inconsistent statement. We disagree. The Commonwealth stipulated only that the officer's notes disclosed an inconsistency. In argument, the prosecutor conceded the fact of the inconsistency as disclosed in the notes and agreed that appellant had not been advised thereof. She argued that the failure to provide appellant with Auditore's notes was not material because the evidence which the notes might have discredited was never heard by the jury. In view of the firm ruling made by the trial judge in favor of the defense when the prosecutor related what she expected to prove by Lewis, there is nothing in this record which discloses a probability that the trial court would have changed its ruling if appellant testified. Even if appellant testified and denied that he took nude pictures of the victim, where he took pictures to be developed would not be relevant. Although counsel may have believed Lewis' testimony would have been admitted in rebuttal, our examination of this record reveals the probability thereof is remote beyond reasonable expectation.

In its post-trial ruling, the trial court concluded that a prior inconsistent statement had been made by Lewis, that the prosecutor knew it at least two days prior to trial, and that she had not advised appellant of its existence. However, the trial court ruled that the withheld evidence was not material and thus, the failure to disclose did not constitute a denial of due process. We agree.

The suppression of exculpatory evidence upon request violates due process where the evidence is *material* either to guilt or punishment, irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Stover v. Commonwealth*, 211 Va. 789, 795, 180 S.E.2d 504, 509 (1971), *cert. denied*, 412 U.S. 953 (1973). Impeachment evidence falls within the *Brady* rule. *United States v. Bagley*, 473 U.S. 667, 676 (1985). However, there is no general constitutional right to discovery in a criminal case and *Brady* did not establish one. *Weatherford v. Bussey*, 429 U.S. 545, 559 (1977); *Lowe v. Commonwealth*, 218 Va. 670, 679, 239 S.E.2d 112, 118, *cert. denied*, 435 U.S. 930 (1977). Nor is an automatic retrial required whenever combing of the prosecutor's files after trial has disclosed evidence possibly useful to the defense but not likely to have changed the

verdict. *See Giglio v. United States,* 405 U.S. 150, 154 (1972). The suppression of evidence sought by discovery amounts to a due process violation only if it deprives the defendant of a fair trial, and the conviction will be reversed only if the evidence is *material* in the sense that its suppression undermines confidence in the outcome of the trial. *United States v. Bagley,* 473 U.S. 667, 678 (1985); *Robinson v. Commonwealth,* 231 Va. 142, 151, 341 S.E.2d 159, 164 (1986). Thus, failure to disclose exculpatory or impeachment evidence requires reversal only if the evidence was "material," and evidence is "material" only if there is a *reasonable probability* that had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Bagley,* 473 U.S. at 682. *See also United States v. Agurs,* 427 U.S. 97, 104 (1976) (a fair analysis of *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial).

In the case before us, the required materiality has not been established. Counsel argues that appellant was prepared to testify in his own behalf until he learned that Lewis, if permitted to testify, would say she had seen additional photos of the victim. We have only counsel's statement to support that argument. But Lewis, pursuant to appellant's objection, was not permitted to testify concerning the nude photos. Nothing would be heard by the Henrico jury than was not heard by the Chesterfield jury. Appellant argues that Lewis *might* have been recalled to rebut appellant's denial and *if* so she *might* have been permitted to tell of the pictures she had seen. This argument is answered by the "if" rule discussed in *Lowe,* 218 Va. at 679, 239 S.E.2d at 118. As was there said, the obvious speculation inherent in appellant's "if" and "might" contentions is fatal to the validity of the position he takes. *Lowe,* 218 Va. at 679, 239 S.E. 2d at 118. There is nothing in this record which indicates that the trial judge would have changed his ruling. Denise Lewis stated clearly that she could not say who took the nude photos she had seen. Moreover, the record discloses that the prosecutor came close to being sanctioned for continuing to argue after the court admonished her several times that it had ruled Lewis' nude photo testimony inadmissible. It is improbable that she would have attempted to recall Lewis for the reason counsel asserts he feared. Appellant's suggestion that he

feared that Lewis would be permitted to give evidence in rebuttal which had been excluded on direct is sheer speculation and "such conjecture is insufficient to bring the motion here under the rule of *Brady* and *Stover*." *Lowe*, 218 Va. at 679, 239 S.E.2d at 118.

We find that there is no reasonable probability that the result of this trial would have been different if, prior to trial, appellant had been given Officer Auditore's notes.

For the reasons stated, the judgment of the trial court is

*Affirmed.*

Hodges, J., and Keenan, J., concurred.