COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia

ELMER C. BENNEFIELD

v.   Record No. 1062-94-4

COMMONWEALTH OF VIRGINIA                         OPINION BY
                                            JUDGE CHARLES H. DUFF
FRANK D. KELLY, S/K/A                          FEBRUARY 27, 1996
 FRANK DAMON KELLY, JR.

v.   Record No. 2073-94-4

COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                      F. Bruce Bach, Judge

              Stephen F. Breenwald; Harvey H. Perritt, Jr.,
              for appellant Bennefield.

              William B. Moffitt; Joel Simberg (Moffitt,
              Zwerling & Kemler, P.C., on brief), for
              appellant Kelly.

              John H. McLees, Jr., Assistant Attorney
              General (James S. Gilmore, III, Attorney
              General, on briefs), for appellee.


     Elmer C. Bennefield and Frank D. Kelly were convicted of
murder, abduction, and use of a firearm in the commission of a
felony.  On appeal, they contend that their retrial was barred by
the double jeopardy clauses of the United States and the Virginia
Constitutions.  We disagree and affirm their convictions.

                          BACKGROUND

     During the late hours of July 30, 1993, four high school
friends, Ryan Quinn, Jason McCree, Jacob Barnhart, and William

Crocker (the Crocker group), attempted to purchase marijuana from Kelly, Bennefield and Rick Herring (the Kelly group). The Crocker group gave the Kelly group one hundred fifty dollars, and they followed the Kelly group by car to a restaurant. The Kelly group travelled together in one car, and the Crocker group followed in Crocker's car. The Kelly group joined with another group (the Karim group) at the restaurant, and the Karim group, in a third car, followed the Kelly and Crocker groups to a motel. Someone in the Kelly group told the Crocker group that a man had taken the drug purchase money and fled without delivering the marijuana. On the pretext of finding the person who had taken the money, the Crocker group followed the cars carrying the Kelly and Karim groups to a deserted construction site. At the construction site, members of the Kelly and Karim groups pointed guns at the Crocker group members and ordered them to lie on the ground. The Kelly and Karim group members shot three members of the Crocker group, injuring Quinn and McCree and killing Crocker. Barnhart fled, uninjured.

On February 28, 1994, Bennefield, Kelly and Herring were jointly tried pursuant to Code § 19.2-262.1. On March 2, 1994, during the prosecution's direct examination of Quinn, Bennefield and Kelly (appellants) learned for the first time that Quinn had received psychological counseling and possibly suffered from post-traumatic stress disorder. Appellants also discovered for the first time that Barnhart, who testified before Quinn, may

2

have been receiving counseling.  Bennefield told the trial court that he did not want a mistrial, but Kelly moved for a mistrial. The trial court recessed until March 8, 1994, to allow counsel to review and investigate the newly learned information relating to the Commonwealth's witnesses.

The trial court ordered the Commonwealth's attorney to review his file, interview the witnesses, and give the defendants any information remotely exculpatory.

When trial reconvened on March 8, 1994, counsel for Kelly told the trial judge that, moments before the trial resumed, he received from the Commonwealth a statement made by McCree that differed from McCree's trial testimony.  Bennefield then moved for a mistrial.  After hearing argument by counsel, the trial judge declared a mistrial.

From April 27 through April 29, 1994, the trial judge conducted a hearing and heard testimony relating to appellants' motions to dismiss based on double jeopardy and whether the Commonwealth intended to cause a mistrial.  The trial judge denied the motions, and levied a sanction against the prosecutor. On July 12 and 13, 1994, appellants were retried and found guilty.

### STANDARD OF REVIEW

Whether a prosecutor intended to provoke or goad a defendant into moving for a mistrial "is a question of fact for the trial court to resolve."  Robinson v. Commonwealth, 17 Va. App. 551,

555, 439 S.E.2d 622, 625, <u>aff'd on reh'g en banc</u>, 18 Va. App. 814, 447 S.E.2d 542 (1994). On appeal, the trial court's finding is accorded great deference. <u>Id.</u> at 555 n.4, 439 S.E.2d at 625 n.4.

APPELLANT'S FIFTH AMENDMENT CLAIM

The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions [or multiple punishments] for the same offense. As a part of this protection against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant a "valued right to have his trial completed by a particular tribunal." The Double Jeopardy Clause, however, does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding. If the law were otherwise, "the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again."

<u>Oregon v. Kennedy</u>, 456 U.S. 667, 671-72 (1982) (citations and footnote omitted). <u>See</u> <u>also</u> <u>Wade v. Hunter</u>, 336 U.S. 684, 688-89

4

(1949) ("a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments").

Generally, "when a mistrial is declared at the defendant's behest, he is not permitted to claim the protection of the double jeopardy bar.  However, when a defendant requests a mistrial because of intentional prosecutorial misconduct, the double jeopardy bar will apply."  Kemph v. Commonwealth, 17 Va. App. 335, 341, 437 S.E.2d 210, 213 (1993) (citations omitted).  In other words, "the Commonwealth cannot use its own misconduct to gain an advantage."  Id. at 341, 437 S.E.2d at 213-14.

This exception is a narrow one and is applicable "'[o]nly where the government conduct in question is intended to "goad" the defendant into moving for a mistrial.'"  Robinson, 17 Va. App. at 553, 439 S.E.2d at 623 (quoting Kennedy, 456 U.S. at 676).  "The [narrow] standard applied in Kennedy is that prosecutorial conduct, even if viewed as harassment or overreaching and sufficient to justify a mistrial, does not bar retrial absent proof of intent on the part of the prosecutor to subvert the protections afforded by the double jeopardy clause."  MacKenzie v. Commonwealth, 8 Va. App. 236, 240, 380 S.E.2d 173, 175 (1989) (citing Kennedy, 456 U.S. at 675-76) (emphasis added).

> In Kennedy, the Supreme Court made it clear that the exclusive focus should not be on the fact of prosecutorial error or on the impact of such error upon a defendant, but only on the intent of the prosecutor in committing

5

> the error. Accordingly, [the appellant], who
> has the burden of proving that the second
> prosecution is barred by double jeopardy,
> must produce sufficient evidence to allow the
> court to infer "the existence or nonexistence
> of intent from objective facts and
> circumstances."

Robinson, 17 Va. App. at 553, 439 S.E.2d at 624 (quoting Kennedy,
456 U.S. at 675) (citation and footnotes omitted).

"In order to grant [appellant's] plea of double jeopardy,
the facts must warrant the conclusion that there was an
instigative intention to subvert the protections afforded by the
Double Jeopardy Clause." Robinson, 17 Va. App. at 555, 439
S.E.2d at 625.

From April 27 through April 29, 1994, the trial judge who
granted the mistrial heard evidence in order to determine whether
the prosecutor's conduct was intended to cause appellants to
request a mistrial. The prosecutor, Brownelle, testified that he
received notes, reports, and other investigative information from
the police, but that he failed to thoroughly read this
information. He admitted that he did not read supplemental
police reports and that some of the information was exculpatory,
namely, the inconsistent statements of witnesses. The prosecutor
also admitted that his last minute disclosures of certain
evidence were negligent. He unequivocally denied any intent to
cause a mistrial and insisted that the trial was proceeding
favorably.

Investigator Guckenberger testified that he was the lead

6

investigator in the case and that the case was complex and involved much paperwork and many reports. Guckenberger left the city for eight weeks during the investigation in order to attend a training school. Guckenberger said that through an "oversight" on his part, he and Brownelle did not find the supplemental police report containing McCree's inconsistent statement until after the mistrial was granted. When the prosecutor saw the report, he was "shocked" and told Guckenberger that they had to give the report to the defendants. Guckenberger also indicated that certain statements made at a hospital were made under adverse conditions; therefore, he did not rely on them as much as on the statements taken a few days later in calmer surroundings. Guckenberger recorded the later statements on tape and had them transcribed.

Investigator Cline testified that, after the mistrial was granted, the prosecutor told him to review his police file. At that time, Cline discovered a statement made by Quinn in the hospital on the night of the crime. Cline thought he had given it to the prosecutor. Cline kept a separate file of which Guckenberger and Brownelle were unaware. On the day before the April 28, 1994 hearing, Cline first realized he had a note suggesting that Quinn visited a psychiatric facility.

Two attorneys testified and opined about the impact that the undisclosed or late-disclosed evidence could have had and whether such disclosure would prompt them to request a mistrial.

After hearing three days of testimony, and, based on "the objective facts and circumstances," the trial court found, that the prosecutor "did not intend to provoke a mistrial. I'll say that beyond any reasonable doubt."

> I also find looking at the facts objectively that -- and I'll say that this hearing has not really been about discovery or exculpatory evidence. It's not really about did these Defendants get a fair shake as a result of Brownelle's actions, because clearly they didn't. They got a bad deal as a result of it. . . . What's the objective evidence as far as [Prosecutor] Brownelle is concerned? I think it probably shows -- I don't know whether it's laziness, whether it's procrastination, certainly negligence. I would say certainly gross negligence. I'll go further and say as a finding it shows near total indifference at least to Court Orders . . . .
>
> . . . Now, I find for the first time during this hearing that he didn't even look at the files sometimes. He used words in his testimony that he glanced at the file or he perused the file. I mean, the Commonwealth has the absolute duty to study the file to comply with the Court Orders.
>
> I would say the objective evidence shows probably an intent to stonewall. Instead of giving -- if something's questionable -- I said this during the case. If something's questionable, I feel like it's the Commonwealth's duty to give that to the Defendant. Now, Brownelle obviously took the position that if it was questionable to withhold or at least give it to them at the least advantageous time for them.
>
> And I make all of these findings here on this record for whatever somebody else may want to do with it. But I cannot find and do not find that he did these things in order to provoke a mistrial. I think the objective evidence is to the contrary and so I find.

After making its findings, the trial court imposed a $6,700

8

sanction against the prosecutor for violating the court's orders relating to discovery and exculpatory evidence. The record before us confirms the appropriateness of such severe sanctions.

Whether a prosecutor "intended to 'goad' the defendant into moving for a mistrial" requires an assessment of the "objective facts and circumstances of the case." Kennedy, 456 U.S. at 675-76. Here, the prosecutor successfully moved for a joint trial of three co-defendants pursuant to Code § 19.2-262.1. Numerous police officers investigated the case, collected evidence, and submitted reports. The crime involved five co-defendants plus two additional suspects and four victims.

We find it significant that the trial judge who conducted the hearing on the double jeopardy issue was the same judge who presided at appellants' first trial. For that reason, he was better able to determine how the prosecution's case was progressing, and whether the prosecutor had any motivation or desire to cause a mistrial so as to gain a more favorable position at a new trial. See Robinson, 17 Va. App. at 555, 439 S.E.2d at 624-25 (noting that by having original trial judge hear double jeopardy argument better enabled judge to properly consider strength of Commonwealth's case at first trial and determine issues of credibility). The conduct underpinning appellants' complaints, the prosecutor's failure to comply with discovery orders and to timely furnish exculpatory evidence, began before the start of trial and continued throughout the

9

trial.  The consistency of his conduct, predating the trial and continuing after it began, belies an assumption that he suddenly, during trial, manifested an "instigative intention to subvert the protections afforded by the Double Jeopardy Clause."  Id.

In finding that the prosecutor did not intend to provoke a mistrial, the trial judge, positioned as he was, could rely on "the prosecutor's representations about his intent, the prosecutor's credibility as a witness and the strength of the Commonwealth's evidence at the first trial."  Id. at 554, 439 S.E.2d at 624.

The prosecutor's testimony indicated, for example, that he did not believe some of the undisclosed information was exculpatory.  He also failed to credit as reliable certain inconsistent statements made by the victims on the night of the crimes, which were made under stressful and chaotic hospital conditions.  Some of the statements were misplaced by the police and, apparently, were not timely provided to the prosecution. The prosecutor became aware of Quinn's psychological counseling only during his direct examination of Quinn at the first trial; the information was in Quinn's victim impact statement prepared for sentencing of a juvenile co-defendant, Leon Peden, and the prosecutor had not read it.  Peden's sentencing had not occurred at the time of the February 28, 1994 trial.

The trial judge believed the prosecutor's testimony that he did not thoroughly read the files or conscientiously follow

10

discovery orders directing him to search and reveal discoverable information. Because the prosecutor failed to read some reports, the trial judge characterized the prosecutor's conduct as "laziness," "procrastination," "gross negligence," and "total indifference." He found an "intent to stonewall," in that the prosecutor either refused to view certain evidence as exculpatory or waited until the last moment to disclose it. However, the trial judge unequivocally found no intent "to provoke a mistrial."

> As we have consistently held in our prior opinions, prosecutorial conduct, even if viewed as [harassing] or overreaching and sufficient to justify a mistrial, does not bar retrial absent proof of intent on the part of the prosecutor to subvert the protection afforded by the double jeopardy clause.

Kemph, 17 Va. App. at 341, 437 S.E.2d at 214 (alteration in original) (quoting MacKenzie, 8 Va. App. at 240, 380 S.E.2d at 175). See also Robinson, 17 Va. App. at 555, 439 S.E.2d at 625 ("Without the requisite intent, . . . gross prosecutorial misconduct will not satisfy the exception set forth in Kennedy").

Based on the appropriate standard of review, giving due deference to the trial court's findings of fact, and based on the objective facts and circumstances before the trial court, we conclude that the trial court's findings are supported by credible evidence. Therefore, the trial court's finding that there was no intent to provoke a mistrial is not clearly erroneous. Accordingly, under the standard expressed in Oregon

11

v. Kennedy, appellants' retrial did not violate the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution.

### APPELLANTS' STATE CONSTITUTIONAL CLAIM

Appellants' second argument is that the prosecutor's egregious conduct was not the type of conduct contemplated under Oregon v. Kennedy, and that a more stringent analysis should be applied. In support of this argument, appellants cite Justice Stevens' concurring opinion in Kennedy, in which Stevens unsuccessfully argued for a broader "overreaching" standard. 456 U.S. at 681-93. Appellants offer no majority or plurality opinions from the Supreme Court providing an alternative applicable standard. In support of their position, appellants cite cases from state courts that have expanded the Kennedy standard under their respective state constitutions. This argument also relates to appellants' third argument, namely, that the Double Jeopardy Clause contained in Article I, section 8 of the Virginia Constitution provides greater protection than that afforded under the federal Constitution, as announced in Kennedy. Therefore, we consider arguments two and three together.

In Kemph v. Commonwealth, this Court held that, by applying the Kennedy analysis to double jeopardy claims, as we did in MacKenzie, the protections against double jeopardy afforded under the United States Constitution are identical with those embodied in Article I, section 8 of Virginia's Constitution:

> Kemph asserts for the first time on appeal

12

> that the double jeopardy clause of the
> Virginia constitution protects him from
> retrial even if the United States
> Constitution does not.  This claim is barred
> by Rule 5A:18; nonetheless, as this Court has
> ruled that resolution of such a double
> jeopardy claim is controlled by Oregon v.
> Kennedy, MacKenzie, 8 Va. App. at 239, 380
> S.E.2d at 175, his argument lacks merit.

Kemph, 17 Va. App. at 343 n.1, 437 S.E.2d at 215 n.1.

Our courts have consistently held that the protections afforded under the Virginia Constitution are co-extensive with those in the United States Constitution.  Peterson v. Commonwealth, 5 Va. App. 389, 394, 363 S.E.2d 440, 443 (1987) (stating that the double jeopardy clauses of the Federal Constitution and the Virginia Constitution "basically afford[] a defendant" the same three protections).  See also Lowe v. Commonwealth, 230 Va. 346, 348 n.1, 337 S.E.2d 273, 274 n.1 (1985); Walton v. City of Roanoke, 204 Va. 678, 682, 133 S.E.2d 315, 318 (1963); Flanary v. Commonwealth, 113 Va. 775, 779, 75 S.E. 289, 291 (1912); Farmer v. Commonwealth, 12 Va. App. 337, 340, 404 S.E.2d 371, 372 (1991) (en banc); I. A. Howard, Commentaries on the Constitution of Virginia 182 (1974).  Neither the facts of this case nor our prior decisions support an

extension of the protections afforded under our Constitution beyond those contained in the federal Constitution.

<u>Affirmed.</u>
