COURT OF APPEALS OF VIRGINIA


Present:  Judges Fitzpatrick, Overton and Senior Judge Hodges


HENRY COON DAVIS, A/K/A
 H. C. DAVIS
                                    MEMORANDUM OPINION[*]
v.   Record No. 0517-95-3       BY JUDGE WILLIAM H. HODGES
                                     SEPTEMBER 24, 1996
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
                    Charles H. Smith, Jr., Judge

           James T. Ward (Reelia R. Watson, on brief),
           for appellant.

           (James S. Gilmore, III, Attorney General;
           Leah A. Darron, Assistant Attorney General,
           on brief), for appellee.  Appellee submitting
           on brief.


     The appellant, Henry Davis, was convicted of arson and the

murders of Sherry and Savannah Stamper, which resulted from the

arson.  On appeal, Davis contends that the trial court erred in

refusing to grant his motion for a new trial based on one of two

alternative grounds: (1) the Commonwealth's failure to provide

exculpatory evidence; or (2) newly discovered evidence.  For the

reasons that follow, we affirm the trial court's denial of

appellant's new trial motion.

                            BACKGROUND

                      The Preliminary Hearing

     On May 25, 1994, a joint preliminary hearing was held for

---

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

appellant and two codefendants, Ralph Allen Phillips, Jr.
(Phillips) and William Ray Davis (Billy).  During that hearing,
the prosecution's key witness, Lonnie Buryl Pierce, testified.
Pierce was charged with two counts of conspiracy to commit
murder.  Pierce testified that around 11:00 p.m. on the night of
the crimes, he left his girlfriend's house in Chilhowie and
arrived "at the intersection at [Routes] 58 and 603" in Konnarock
around 11:20 p.m.  He was sitting in his parked car when a car
containing appellant, Phillips, and Billy "pulled in beside"
Pierce's car.  Billy invited Pierce to ride with them, and Pierce
accepted the invitation.  The foursome visited the home of Tammy
Perrin, where appellant obtained a can.  They left Perrin's home
and travelled to the Stamper home, where Pierce saw appellant
pour something around the house and on the porch.  Pierce then
saw a "flame like a matchlight" originate from appellant.  After
Pierce turned to run, he heard "something go 'whew' real loud
behind [him]."

Counsel for appellant and the codefendants cross-examined
Pierce and discovered that Pierce made numerous statements to the
police and to the Commonwealth's Attorney.  Pierce admitted
giving two written statements to the Commonwealth's Attorney.
One statement was consistent with his testimony and described the
conduct of the four men culminating in appellant's actions at the
Stamper home.  The other statement differed only in that it did
not include Phillips' name as the fourth person in the car.

Pierce also admitted talking with Officer Don Hash three or four times before he was charged with any crimes. Pierce admitted that, "[i]n addition to a written statement [he] gave to Don Hash, [he] gave them [sic] some verbal statements." Pierce related a written statement that he gave to Hash in which he falsely told Hash that he "went straight from Chilhowie to [his home in] White Top [and] didn't see anybody; didn't talk to anybody."

### Appellant's Trial

On September 27, 1994, appellant was tried separately from his codefendants. Danny Stamper, the husband and father of the murder victims, testified that he and Billy, appellant's brother, fought twice during the afternoon preceding the fire, and that Stamper "got the better of" Billy.

Pierce gave substantially the same incriminating testimony that he provided at the preliminary hearing, after which defense counsel cross-examined him. Pierce said that his first statement to the police was made to Grayson County Sheriff D. B. Taylor. In the statement, Pierce "denied knowing anything about it." Pierce agreed with defense counsel that, on March 12, 1994, a few days after the statement to Taylor, he told the police that he saw appellant start the fire. During cross-examination, defense counsel asked Pierce to explain the inconsistency between his statement made on March 12, 1994 that he was intoxicated on the night of the fire, and his testimony at the preliminary hearing

3

that he was not drunk that night.  Pierce admitted that he lied in the March 12, 1994 statement.

On redirect, Pierce described his prior convictions, including the fact that he pleaded guilty to conspiracy to commit both murders.  He also admitted giving various prior statements that differed from his trial testimony.

## Codefendants' Trial

On October 20, 1994, Billy and Phillips were tried jointly.  During that trial, an additional statement written by Pierce was disclosed.

## Motion for New Trial

On February 7, 1995, at sentencing, appellant argued his motion for a new trial.  Appellant represented that "a statement signed by Lonnie B. Pierce, Jr." "was placed in evidence" at the "trial of the co-defendants [Billy and Phillips]."

Appellant contended that the statement was never disclosed.  In it, Pierce stated that when he arrived at Konnarock, he saw a man with long hair and a beard walking along the road.  After he passed the man, Pierce "saw a light in the direction of the Stamper house which [Pierce] thought was a porch light."  On his way to his house, Pierce saw "a loud old truck."  He arrived home around 11:40 p.m. and went to bed.  When he awoke the next morning, his "mother told [him] what had happen[ed]."

Appellant asserted that the statement was exculpatory, and that it was the only statement by Pierce corroborated by "other

4

witnesses that said 'they saw a man walking along that road at the time this happened.'" Specifically, appellant alleged that, by having access to the statement, the codefendants were able to cross-examine witnesses Cathy Lowe, Barbara Trivette, and Jennifer Graham about seeing "a man walking along that road at the time they would have seen the fire." Appellant contended that he was prejudiced by not having the statement and that he could not have discovered it before trial because he was unaware of its existence.

The Commonwealth's Attorney told the trial court that he gave appellant "every single piece of paper we had that had anything that contained anything." The prosecutor argued that, at most, the statement was evidence to impeach Pierce. He asserted that the recently discovered statement was substantially similar to the statement Pierce gave to Sheriff Taylor on March 8, 1994, in which Pierce said that he "passed a[n] old, red, loud pick-up truck" that belonged to appellant. In the March 8, 1994 statement, Pierce said he was unable to see the driver of the truck and he denied any involvement in or knowledge of the fire.

At the hearing, appellant offered two exhibits for admission: a copy of Pierce's statement and a portion of the transcript of the codefendant's trial containing the testimony of Cathy Lowe, Barbara Trivette and Jennifer Graham. No witnesses testified, and no further evidence was presented.

On appeal, appellant contends that because he was unaware of

Pierce's statement, in which Pierce identified an unknown person in the area at the time of the fire, he was unable to call witnesses Lowe, Trivette, and Graham. Alternatively, appellant contends that "it would have been senseless" to call these witnesses to testify about the pickup truck and strange man without having corroborative evidence from Pierce.

DISCOVERY VIOLATION: EXCULPATORY EVIDENCE

For a new trial to be granted based on the failure to disclose exculpatory evidence, the nondisclosed evidence must be material so as to create "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). It is well established that "no constitutional right to discovery exists in a criminal case in this Commonwealth," but due process requires the prosecution to produce, upon request, evidence material to guilt or punishment which is favorable to the accused. Keener v. Commonwealth, 8 Va. App. 208, 212, 380 S.E.2d 21, 23 (1989) (citation omitted).

"The remedial relief to be granted by the trial court following a discovery violation or upon the late disclosure of evidence is within the trial court's discretion and will not be disturbed on appeal unless plainly wrong." Moreno v. Commonwealth, 10 Va. App. 408, 420, 392 S.E.2d 836, 844 (1990). See also Frye v. Commonwealth, 231 Va. 370, 383, 345 S.E.2d 267, 277 (1986).

6

Evidence is exculpatory under Brady and, therefore discoverable, if the defendant could have used it for impeachment purposes.  Bagley, 473 U.S. at 676; Robinson v. Commonwealth, 231 Va. 142, 150, 341 S.E.2d 159, 164 (1986); MacKenzie v. Commonwealth, 8 Va. App. 236, 243, 380 S.E.2d 173, 177 (1989). Because the statement could have been used to impeach Pierce's testimony, it was exculpatory.  However, even if evidence is deemed exculpatory, a defendant is not entitled to new a trial unless the evidence is material.  See Humes v. Commonwealth, 12 Va. App. 1140, 1143, 408 S.E.2d 553, 555 (1991).

In determining whether undisclosed evidence is material, the court must "assess the reasonable probability of a different result in light of the totality of circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the [nondisclosure]." Taitano v. Commonwealth, 4 Va. App. 342, 349, 358 S.E.2d 590, 593-94 (1987).

> The suppression of evidence sought by
> discovery amounts to a due process violation
> only if it deprives the defendant of a fair
> trial, and the conviction will be reversed
> only if the evidence is material in the sense
> that its suppression undermines confidence in
> the outcome of the trial.  Thus, failure to

7

> disclose exculpatory or impeachment evidence
> requires reversal only if the evidence was
> "material," and evidence is "material" only
> if there is a <u>reasonable probability</u> that had
> the evidence been disclosed to the defense,
> the result of the proceeding would have been
> different.  A reasonable probability is a
> probability sufficient to undermine the
> confidence in the outcome.

<u>MacKenzie</u>, 8 Va. App. at 244, 380 S.E.2d at 177 (citations omitted).

Pierce did not come forward with any information until four years after the fire.  The undisclosed statement was merely one of many denials by Pierce of any involvement in the fire.  It was substantially similar to the statement given to Sheriff Taylor in that Pierce denied any knowledge of or involvement in the fire. In both statements, he stated that he saw a loud, old truck.  The statements differed only in the fact that Pierce did not say that the truck belonged to appellant in the undisclosed statement, and he failed to mention a tall, long-haired, bearded man walking on the road in the statement to Taylor.

Defense counsel possessed numerous statements made by Pierce which contained falsehoods.  In fact, Pierce readily admitted lying to the authorities in prior statements.  At trial, defense counsel reviewed Pierce's preliminary hearing testimony and

pointed out inconsistencies. Moreover, the fact finder was made aware that he had a number of relevant criminal convictions which further affected his credibility. Because appellant possessed Pierce's statement to Taylor, he was able to sufficiently impeach Pierce.

After examining the record and viewing the totality of circumstances, we do not find that the undisclosed statement was material so as to create "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, 473 U.S. at 682.

Accordingly, the trial court did not abuse its discretion in refusing to grant a new trial based on a Brady violation.

Appellant also contends that the failure to disclose the statement affected his ability to effectively use testimony from other witnesses. A claim that the prosecution has caused the defense to lose an opportunity to investigate and uncover potentially exculpatory evidence must be supported by a showing of bad faith. See Arizona v. Youngblood, 488 U.S. 51, 58 (1988); Tickel v. Commonwealth, 11 Va. App. 558, 563, 400 S.E.2d 534, 537 (1991). Appellant conceded at the hearing for a new trial that the statement "was not intentionally withheld." Accordingly, he cannot now allege the requisite bad faith to warrant review of his claim of potentially exculpatory evidence.

NEWLY DISCOVERED EVIDENCE
"Motions for new trials based on after-discovered evidence are addressed to the sound discretion of the trial judge, are

9

> not looked upon with favor, are considered
> with special care and caution, and are
> awarded with great reluctance. . . . The
> applicant bears the burden to establish that
> the evidence (1) appears to have been
> discovered subsequent to trial; (2) could not
> have been secured for use at the trial in the
> exercise of reasonable diligence by the
> movant; (3) is not merely cumulative,
> corroborative or collateral; and (4) is
> material, and such as should produce opposite
> results on the merits at another trial."

Hopkins v. Commonwealth, 20 Va. App. 242, 249, 456 S.E.2d 147, 150 (1995) (en banc) (quoting Stockton v. Commonwealth, 227 Va. 124, 149, 314 S.E.2d 371, 387, cert. denied, 469 U.S. 873 (1984)). See also Odum v. Commonwealth, 225 Va. 123, 301 S.E.2d 145 (1983).

"'The applicant for a new trial must set forth in affidavits facts showing what his efforts were to obtain the evidence and explaining why he was prevented from securing it.'" Yeager v. Commonwealth, 16 Va. App. 761, 768, 433 S.E.2d 248, 252 (1993) (quoting Fulcher v. Whitlow, 208 Va. 34, 38, 155 S.E.2d 362, 365 (1967)); see also Yarborough v. Commonwealth, 15 Va. App. 638, 647, 426 S.E.2d 131, 136 (1993) (finding that appellant failed to file the required affidavits and that he failed to show that he made any effort to discover the evidence he relied upon to obtain a new trial), rev'd in part on other grounds, 247 Va. 215, 441 S.E.2d 342 (1994).

Appellant bore the burden of establishing that he could not have discovered the statement through the exercise of due diligence; however, he failed to file an affidavit or otherwise

present evidence at the hearing to show that he exercised any diligence in procuring the statement.  The record does not show that appellant interviewed Pierce or Hash or was prevented from doing so.  The record also indicates that the codefendants were able to procure the statement three weeks after appellant's trial.  Thus, appellant failed to show that he could not have acquired the statement through due diligence.

Moreover, as discussed above, the statement was not material such that its disclosure would have produced a different outcome.  Accordingly, the trial court did not abuse its discretion in denying a new trial based on after discovered evidence.

For the foregoing reasons, we affirm appellant's convictions.

<u>Affirmed.</u>

11