COURT OF APPEALS OF VIRGINIA


Present: Judges Bray, Overton and Bumgardner
Argued at Salem, Virginia


DENNIS EARL STONEMAN

MEMORANDUM OPINION[*] BY
v.          Record No. 3069-96-3          JUDGE RICHARD S. BRAY
                                          JUNE 9, 1998
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CARROLL COUNTY
Duane E. Mink, Judge

Gary L. Lumsden (Rhonda L. Overstreet;
Lumsden & Overstreet, on brief), for
appellant.

Robert H. Anderson, III, Assistant Attorney
General (Richard Cullen, Attorney General, on
brief), for appellee.


A jury convicted Dennis E. Stoneman (defendant) of capital murder, first-degree murder, and related firearm offenses. On appeal, defendant complains that the trial court erroneously denied his motions (1) for a second preliminary hearing, (2) for a continuance, and (3) to strike two prospective jurors for cause. Finding no error, we affirm the convictions.

The parties are fully conversant with the record, and this memorandum opinion recites only those facts necessary to a disposition of the appeal. In accord with well established principles, "we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Martin v. Commonwealth, 4 Va. App.

_____
[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

438, 443, 358 S.E.2d 415, 418 (1987).

The record establishes that defendant, accompanied by his son, D.J., then age fifteen, was driving about Carroll County, Virginia, on May 16, 1995, searching for his estranged wife. When he encountered Tina Quesenberry, his wife's half-sister, and her husband, Steve, he shot and killed both, following a brief argument. Defendant was later apprehended in North Carolina, and the report of a psychiatric examination ordered by the Superior Court incidental to extradition proceedings, dated June 6, 1995, concluded that defendant was "incapable of proceeding to trial." Accordingly, the Superior Court ruled on June 26, 1995 that defendant was "presently . . . incompetent [for] trial," but, nevertheless, ordered extradition to Virginia.

At defendant's preliminary hearing on February 29, 1996, he moved the general district court to dismiss the prosecution on jurisdictional grounds[1] and, alternatively, for an additional psychiatric evaluation. The district court denied both motions; however, psychiatric evaluations ordered by the trial court following indictment determined that defendant was competent for trial "as of May," 1996. Defendant, thereafter, moved the court to order a new preliminary hearing, arguing that the North Carolina finding of incompetency established that defendant had been incapable of assisting in his defense at the prior hearing. Ruling that defendant had suffered no "prejudice," the court

---

[1]The jurisdictional argument was not pursued on appeal.

denied his motion.

In the months preceding trial on November 18, 1996, the Commonwealth did not promptly and fully comply with several discovery orders requiring, inter alia, disclosure of exculpatory evidence to defendant.  However, by October 29, 1996, the Commonwealth had provided defendant with evidence which he construed as supportive of a theory that D.J. actually perpetrated the offenses.  Thus, on November 13, 1996, and, again, on the day of trial, defendant moved the court to continue the proceedings to permit review and investigation of such evidence, which motions were denied by the trial court.

During voir dire prior to trial, venireperson Michael McBride acknowledged reading news accounts and hearing conversations relating to the offenses, and having a "vague opinion of whether [defendant] is guilty."  Upon questioning, however, McBride answered that he would "try to go by the evidence" and that his opinion "will have no bearing whatsoever on the evidence."  The court, therefore, determined that McBride "can stand indifferent to the cause . . . and make his decision in light of that evidence" and overruled defendant's challenge for cause.

Venireperson Carl Martin was also familiar with news accounts of the crimes but assured the court that he had developed no opinion and could decide the case solely upon the evidence presented.  Martin acknowledged a friendship with Tina

Quesenberry's family, but was certain that this relationship would not affect his judgment. Thus, the court again denied defendant's challenge, finding that Martin had been "very forthright" and "didn't waffle on any of his answers."

### I. The Preliminary Hearing

> If, at any time after the attorney for the defendant has been retained or appointed and before the end of trial, the court finds, upon hearing evidence or representations of counsel for the defendant . . . that there is <u>probable cause</u> to believe that the defendant lacks substantial capacity to understand the proceedings against him or to assist his attorney in his own defense, the court shall order that a competency evaluation be performed . . . .

Code § 19.2-169.1 (emphasis added). Here, in denying defendant's motion for a psychiatric evaluation, the district court implicitly found no "probable cause" to "believe that the defendant lacks substantial capacity to understand the proceedings against him or to assist his attorney in his own defense."

"Probable cause, as the very name implies, deals with probabilities. These are not technical; they are the factual and practical considerations in every day life on which reasonable and prudent men, not legal technicians, act." <u>Derr v. Commonwealth</u>, 242 Va. 413, 421, 410 S.E.2d 662, 666 (1991). The record clearly establishes that defendant made numerous appearances before both the general district and circuit courts prior to the preliminary hearing, appropriately participated in

- 4 -

such proceedings and failed to raise the issue of competency, either through counsel or otherwise.  Moveover, the North Carolina finding was specifically limited to defendant's mental status on June 6, 1995, nearly nine months before the preliminary hearing, while the later findings of competency in Virginia came within three months of the disputed proceeding.  Such circumstances clearly did not establish the requisite probable cause as a matter of law and fully supported the trial court's denial of defendant's motion for a new hearing.

## II.  The Discovery

"The suppression of exculpatory evidence upon request violates due process where the evidence is material either to guilt or punishment . . . ."  MacKenzie v. Commonwealth, 8 Va. App. 236, 243, 380 S.E.2d 173, 177 (1989) (citations omitted).Thus, failure to disclose [such] evidence requires reversal only if the evidence was "material," and evidence is "material" only if there is a reasonable probability that had the evidence been [timely] disclosed to the defense, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 244, 380 S.E.2d at 177.  "[S]peculation and . . . 'conjecture'" will not support reasonable probability.  Id. at 245, 380 S.E.2d at 178.

Moreover,

- 5 -

> [l]ate disclosure does not take on
> constitutional proportions unless an accused
> is prejudiced by the discovery violations
> depriving him of a fair trial. So long as
> exculpatory evidence is obtained in time that
> it can be used effectively by the defendant,
> and there is no showing that an accused has
> been prejudiced, there is no due process
> violation. It is the defendant's ability to
> utilize the evidence at trial, and not the
> timing of the disclosure, that is
> determinative of prejudice.

Moreno v. Commonwealth, 10 Va. App. 408, 417, 392 S.E.2d 836, 842 (1990) (citations omitted); Novak v. Commonwealth, 20 Va. App. 373, 389, 457 S.E.2d 402, 409 (1995).

Here, defendant complains that the Commonwealth's dilatory discovery responses necessitated postponement of trial to accommodate investigation and preparation of his theory that D.J. committed the crimes. However,

> [defendant] introduced no evidence post
> verdict that he had uncovered that might have
> been obtained and been used at trial had he
> been furnished earlier [the exculpatory
> evidence][.] . . . [Defendant] cannot provide
> specific evidence of how he was prejudiced by
> not receiving timely disclosure of the
> information. The remedial relief to be
> granted by the trial court following a
> discovery violation or upon the late
> disclosure of evidence is within the trial
> court's discretion and will not be disturbed
> on appeal unless plainly wrong.

Moreno, 10 Va. App. at 420, 392 S.E.2d at 844 (citations omitted); Code § 19.2-265.4. Thus, defendant's "argument that additional time or an earlier disclosure might have revealed additional exculpatory evidence is conjectural and . . . does not rise to the level of a due process violation" or an abuse of

discretion.  See id. at 419, 392 S.E.2d at 844 (citations omitted).

### III.  The Jurors

"[I]n determining whether a prospective juror should have been excluded for cause, we review the entire voir dire, rather than a single question and answer."  Barnabei v. Commonwealth, 252 Va. 161, 174, 477 S.E.2d 270, 277 (1996) (citation omitted). "'The standard to be applied by the trial court in determining whether to retain a venireman on the jury panel is whether his answers during voir dire examination indicate to the court something that would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'"  Moten v. Commonwealth, 14 Va. App. 956, 958, 420 S.E.2d 250, 251 (1992) (citations omitted). "Whether a prospective juror should be excused for cause is a matter resting within the sound discretion of the trial court, and its action in refusing to excuse a particular venireman will not be disturbed on appeal unless the refusal amounts to manifest error."  Yeatts v. Commonwealth, 242 Va. 121, 134, 410 S.E.2d 254, 262 (1991) (citation omitted).

Here, the trial court reasonably concluded that venireperson McBride "can stand indifferent to the cause . . . and make his decision in light of the evidence."  His assurance to "try to go by" the evidence, considered in the context of the entire voir dire, reveals an ability to properly discharge the

responsibilities of jury service in accordance with the instructions of court and attendant oath.  (Emphasis added). See, e.g., Weeks v. Commonwealth, 248 Va. 460, 475, 450 S.E.2d 379, 389 (1994) (juror answered, "I think so," when asked if he could serve impartially; court ruled that response must be viewed in context of "entire voir dire" and "defer[red] to the trial judge" who "'sees and hears the juror'"); Boggs v. Commonwealth, 229 Va. 501, 515, 331 S.E.2d 407, 418 (1985).

Similarly, venireman Martin was "very forthright" during voir dire, satisfying the court that he, also, was capable of performing his duties without bias, despite exposure to news accounts of the offenses and an acquaintance with relatives of a victim.  See, e.g., George v. Commonwealth, 242 Va. 264, 411 S.E.2d 12 (1991) (venireman "not automatically disqualified from acting as a juror [where] his son had served as a pallbearer at [victim's] funeral").

Thus, our examination of the record discloses neither an abuse of discretion by the court nor "manifest error" in overruling defendant's challenge to the two venirepersons.

Accordingly, we affirm the convictions.

                                        Affirmed.