## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

BOSANG v. IRON BELT BUILDING AND LOAN ASSOCIATION.

JUNE 23, 1898.

1. ENABLING ACTS—*How far Valid—Usurious Contracts Declared Valid.*—
Statutes which validate contracts, otherwise invalid, are sustained
where they go no further than to bind a party by a contract which he
has attempted to enter into, but which was invalid by reason of some
personal inability on his part to make it, or through neglect of some
legal formality, or in consequence of some ingredient in the contract
forbidden by law. The Legislature may declare valid contracts which
were usurious at the time they were entered into.

2. CONSTITUTIONAL LAW—*Act Broader than Title—What Latitude Allowed.*
An act, the title of which is "An act to provide a new charter for the
Iron Belt Building and Loan Association," is not unconstitutional on
the ground that its title embraced more than one object, or that the title
was broader than the act, in so far as it validates contracts previously
made by such association which were usurious when made. The pro-
vision is germane to the title, and in furtherance of the object expressed
in the title. This is all that is required. The Constitution is to be
liberally construed, so as to uphold the law, if practicable.

3. CORPORATIONS—*New Charter Extending Powers and Privileges—Assent of
Stockholders.*—A limited power to borrow money conferred on a build-
ing association by a new charter, when no such power was expressly
granted by its original charter, is not such a radical departure from the
original design and business of the association as would necessitate
the assent of each member of the association in order that he may be
bound by it.

Appeal from a decree of the Circuit Court of Pulaski county
pronounced at its March term, 1898, in a suit in chancery
wherein appellant was the complainant, and the appellee was
the defendant.

*Affirmed.*

The object of this suit was to declare the contract between appellant and the Iron Belt Building and Loan Association usurious, and to have all payments made by appellants applied to the principal sum loaned, and, in the meantime, to enjoin the sale of appellant's land upon which he had given a deed of trust to secure the amount borrowed. The original charter is not copied into the record, but it seems to be conceded in the briefs that it contained no express power to borrow money. The amended charter (Acts 1895–'6, p. 535) contains this power. The commissioner to whom the case was referred reported that appellee's debt was not usurious, and that it was entitled to the amount claimed by it.

The depositions taken are not copied in the record, but the report of the commissioner was "admitted to be correct, according to the by-laws of the association and the face of the contract." The following facts were agreed by counsel:

"It is agreed that the charter approved February 20, 1896, and appearing in the Virginia Acts of Assembly of 1895–'96, at page 535, shall be read without being proved as evidence in this cause.

"It is further admitted and agreed that said charter was granted on the application of the board of directors of the Iron Belt Building and Loan Association, and that after the same was enacted and approved, to-wit, on the 27th day of February, 1896, the said charter was accepted by the unanimous vote of said board, at the regular meeting thereof, held on that day.

"And that at said meeting, by appropriate resolution, a special meeting of the stockholders was called to be held on Wednesday, April 15, 1896, at 4 o'clock P. M., for the purpose of formally accepting said charter and to consider the advisability of issuing new classes of stock and bonds as therein allowed. That, in accordance with said resolution, a general meeting of the stockholders was held, after due advertisement thereof in the *Evening World,* a newspaper published in the city of Roanoke, Virginia, and after mailing a formal notice, in writing, of such meeting to each stockholder of the associa-

tion, including the defendant in this case, thirty days prior thereto, a copy of which written notice is hereto appended, marked Exhibit 'X,' and is made a part hereof.

"And that at said meeting the said charter was read and formally accepted by the affirmative vote, 9,428 shares, as against 65 shares voting in the negative.

"The statement and printed notice of stockholders' meeting, filed therewith as an exhibit, are to be read in the cases of *Crabtree, Wilson, Bosang, and Whitman* v. *The Iron Belt Building and Loan Association,* to have the same force and effect as if this statement were a deposition duly taken after notice in the respective cases."

*I. H. Larew,* for the appellant.

*C. A. McHugh* and *T. L. Massie,* for the appellees.

HARRISON, J., delivered the opinion of the court.

This association was organized under a charter granted in 1890 by the Corporation Court of the city of Roanoke, with power to conduct a general building and loan business. This charter was amended and enlarged by an act of the Legislature passed February 20, 1896. The new charter created by this act provides, among other things, as follows : ' " But the present by-laws of the said company, when not inconsistent with the provisions of this charter, shall continue of force until amended or repealed in the manner therein prescribed ; and all contracts heretofore made and entered into by and between the said company and its members under said by-laws and former charter, and not incompatible with this charter, are hereby validated and confirmed."

The appellant contends' that the dealings between himself and the association, which took place under the court charter, were usurious, and that the Legislature had no power in grant-

ing the new charter to confirm and validate the previous invalid and illegal transactions between himself and the company.

The question presented by this contention has been recently decided by this court in the case of *Smoot* v. *Building Association,* 95 Va. 686. The subject is there fully discussed in a well considered opinion by the president of the court, and the conclusion reached that statutes which validate contracts, otherwise invalid, are sustained when they go no farther than to bind a party by a contract which he has attempted to enter into, but which was invalid by reason of some personal inability on his part to make it, or through neglect of some legal formality, or in consequence of some ingredient in the contract forbidden by law. There is no distinction between the case cited and the one at bar, and it must therefore be accepted as settling the point under consideration adversely to the contention of appellant.

It is further contended by appellant that the act creating the new charter is unconstitutional and void because it does not conform to sec. 15 of Article V. of the Constitution, which provides that "No law shall embrace more than one object, which shall be expressed in its title." The act in question is entitled "An act to provide a new charter for the Iron Belt Building and Loan Association of Roanoke, Virginia;" and it is insisted that the provision in the act validating and confirming the transactions between the company and its members, under the court charter, is not contemplated or covered by the title; that the act has two distinct objects, one granting to the association a new charter, and the other validating its acts under the court charter.

The constitutional provision here invoked was not designed to embarrass legislation by making laws unnecessarily restrictive in their scope and operation, and thus multiplying their number. The title of an act will be held sufficient, within the meaning of sec. 15, Article V. of the Constitution, if the things authorized to be done, though of a diverse nature, may be fairly regarded as in furtherance of the object

expressed in the title.    All that is required is that the subjects embraced in the statute, but not expressed in the title, be congruous, and have natural connection with, or be germane to, the subject expressed in the title.    And the Constitution is to be liberally construed, so as to uphold the law, if practicable.    *Iverson Brown's case*, 91 Va. 762.    The same contention that is made in the case at bar was made in *Town of Mahomet* v. *Quackenbush*, 117 U. S. 508.    In that case a similar provision to ours, in the Constitution of Illinois, was invoked against an act of that State entitled "An act to amend the articles of association of the Danville, Urbana, Bloomington and Pekin Railroad Company, and to extend the powers of, and confer a charter upon the same," upon the ground that the body of the act undertook to authorize municipalities to subscribe to the capital stock of the corporation, and upon the further ground that it undertook to validate and give effect to elections in which subscriptions were voted to the capital stock by certain municipalities, which were unauthorized at the time the elections were held.    The court, after citing a number of authorities in support of its conclusion, held that the title of the act was not obnoxious to the constitutional provision invoked against it.

In view of the authorities cited, we are of opinion that, in the case at bar, there is no conflict between the Constitution and the act in question, that said act had but one general object, viz. : to grant a new charter to the company, and that all the provisions of the charter are germane to and have natural connection with the subject expressed in the title.

We are further of opinion that the limited power to borrow money conferred by sec. 6 of the new charter is not such a radical departure from the original design and business of the company as would necessitate the assent of each member of the company in order that he be bound by it.

For these reasons we are of opinion that there is no error in the decree complained of, and it must be affirmed.

*Affirmed.*