COURT OF APPEALS OF VIRGINIA


Present: Judges Coleman, Bray and Bumgardner
Argued at Chesapeake, Virginia


JONATHAN STEPHEN O'MARA

v.   Record No. 0992-99-1

COMMONWEALTH OF VIRGINIA                        OPINION BY
                                           JUDGE RICHARD S. BRAY
RICHARD J. ELLIOTT                            OCTOBER 3, 2000

v.   Record No. 0997-99-1

COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    Frederick B. Lowe, Judge

        Kevin E. Martingayle (Stallings & Richardson,
        P.C., on briefs), for Jonathan Stephen
        O'Mara.

        James O. Broccoletti (Zoby & Broccoletti, on
        brief), for Richard J. Elliott.

        H. Elizabeth Shaffer, Assistant Attorney
        General; John H. McLees, Jr., Senior
        Assistant Attorney General (Mark L. Earley,
        Attorney General, on briefs), for appellee.


        Pursuant to the terms of a plea agreement, Jonathan O'Mara

pled guilty to "Attempted Cross Burning" and "Conspiracy to

Commit a Felony," violations of Code §§ 18.2-423 and 18.2-22,

respectively, expressly reserving the right to appeal a prior

order of the trial court which denied his challenge to the

constitutionality of Code § 18.2-423. In a separate proceeding,

Richard J. Elliott, codefendant with O'Mara, was convicted by a

jury for attempted cross burning, after joining with defendant
O'Mara in the unsuccessful challenge to the constitutionality of
Code § 18.2-423 before the trial court.[1]

Accordingly, both O'Mara and Elliott (defendants) maintain
on appeal "that the code section is unconstitutional as
violative of the free speech and expression protections"
guaranteed by both the United States and Virginia Constitutions.
Joining the two appeals for resolution by this Court, we affirm
the respective convictions.

I.

The substantive facts are uncontroverted.  On the evening
of May 2, 1998, defendants, together with "approximately fifteen
individuals," were "consuming alcohol" at the Virginia Beach
home of David Targee.  When defendant Elliott expressed
unspecified "complaint[s] . . . about his neighbor," James
Jubilee, and his desire to "'get back' at him," someone
"suggested that they burn a cross in [Jubilee's] yard."  In
response, Targee and defendants immediately constructed a crude
cross in Targee's garage and proceeded in Targee's truck to the
Jubilee home.  Elliott "handed the cross" to defendant O'Mara,
who erected and ignited it on Jubilee's property, and the three

_____

[1] Although Judge Lowe presided at the trials of both O'Mara
and Elliott, defendants' constitutional challenges were decided
by Judge Alan E. Rosenblatt, following an extensive hearing and
related argument and memoranda of law.

returned to Targee's residence.  The respective records do not clearly specify Jubilee's race.

Jubilee later discovered the "partially burned cross" and notified police, resulting in the subject prosecutions for violations of Code § 18.2-423 and the attendant conspiracy.

II.

Code § 18.2-423 provides:

> It shall be unlawful for any person or persons, with the intent of intimidating any person or group of persons, to burn, or cause to be burned, a cross on the property of another, a highway or other public place. Any person who shall violate any provision of this section shall be guilty of a Class 6 felony.
>
> Any such burning of a cross shall be prima facie evidence of an intent to intimidate a person or group of persons.

Defendants contend that the statute impermissibly infringes upon expressive conduct, speech protected by the First and Fourteenth Amendments to the Constitution of the United States and Article I, § 12 of the Virginia Constitution, and, therefore, is "plainly unconstitutional."[2]

"'In assessing the constitutionality of a statute . . . [t]he burden is on the challenger to prove the alleged constitutional defect.'"  Woolfolk v. Commonwealth, 18 Va. App.

---

[2] "[L]itigants may challenge a statute on first amendment grounds even when their own speech is unprotected."  Coleman v. City of Richmond, 5 Va. App. 459, 463, 364 S.E.2d 239, 241-42 (1988) (citing Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973)).

840, 848, 447 S.E.2d 530, 534 (1994) (quoting Perkins v.

Commonwealth, 12 Va. App. 7, 14, 402 S.E.2d 229, 233 (1991)).

> "Every act of the legislature is presumed to
> be constitutional, and the Constitution is
> to be given a liberal construction so as to
> sustain the enactment in question, if
> practicable." Bosang v. Iron Belt Bldg. &
> Loan Ass'n, 96 Va. 119, 123, 30 S.E. 440,
> 441 (1898). "When the constitutionality of
> an act is challenged, a heavy burden of
> proof is thrust upon the party making the
> challenge. All laws are presumed to be
> constitutional and this presumption is one
> of the strongest known to the law."
> Harrison v. Day, 200 Va. 764, 770, 107
> S.E.2d 594, 598 (1959).

Moses v. Commonwealth, 27 Va. App. 293, 298-99, 498 S.E.2d 451,

454 (1998).

The First Amendment declares, "Congress shall make no law

respecting an establishment of religion, or prohibiting the free

exercise thereof; or abridging the freedom of speech, or of the

press; or the right of the people peaceably to assemble, and to

petition the government for a redress of grievances." The

Fourteenth Amendment prohibits state action in violation of the

First Amendment.

Similarly, Article I, § 12 of the Virginia Constitution

establishes:

> That the freedoms of speech and of the press
> are among the great bulwarks of liberty, and
> can never be restrained except by despotic
> governments; that any citizen may freely
> speak, write, and publish his sentiments on
> all subjects, being responsible for the
> abuse of that right; that the General
> Assembly shall not pass any law abridging

> the freedom of speech or of the press, nor
> the right of the people peaceably to
> assemble, and to petition the government for
> the redress of grievances.

"Our courts have consistently held that the protections afforded under the Virginia Constitution are co-extensive with those in the United States Constitution."  Bennefield v. Commonwealth, 21 Va. App. 729, 739-40, 467 S.E.2d 306, 311 (1996).

Although "[t]he First Amendment literally forbids the abridgement only of 'speech,'" the Supreme Court has "long recognized that its protection does not end at the spoken or written word."  Texas v. Johnson, 491 U.S. 397, 404 (1989). "[C]onduct may be 'sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments.'"  Id. (quoting Spence v. Washington, 418 U.S. 405, 409 (1974)).  In identifying expressive conduct, the Court must determine "whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'"  Id. (alterations in original) (quoting Spence, 418 U.S. at 410-11).  If so, a proscription of such activity by government "because of disapproval of the ideas expressed" is "content based" suppression of free speech, offensive to the First Amendment and "presumptively invalid."  R.A.V. v. City of St. Paul, 505 U.S. 377, 382 (1992).

However, "our society . . . has permitted restrictions upon the content of speech in a few limited areas, which are 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'"  Id. at 382-83 (quoting Chaplinsky v. New Hampshire, 315 U.S. 568, 572 (1942)).  Thus, First Amendment protection "does not include a freedom to disregard these traditional limitations," thereby allowing government to regulate obscenity, defamation, "fighting words," id. at 383 (citing Chaplinsky, 315 U.S. at 572), and threats of violence.  See id. at 383, 388 (citing Watts v. United States, 394 U.S. 705, 707 (1969)); see also In re:  Steven S., 31 Cal. Rptr. 2d 644, 647 (Ct. App. 1994) (holding that threats and fighting words are "remove[d] . . . from the scope of the First Amendment"); Florida v. T.B.D., 656 So. 2d 479, 480-81 (Fla. 1995), cert. denied, 516 U.S. 1145 (1996) (concluding that threats of violence and fighting words are proscribable because government has "valid interest" in protecting citizens both from fear of violence and violence).

The "'true threat'" doctrine articulated by the Supreme Court in Watts permits punishment of actual speech or expressive conduct "when a reasonable person would foresee that the threat would be interpreted as a serious expression of intention to inflict bodily harm."  In re:  Steven S., 31 Cal. Rptr. 2d at 647 (citing Orozco-Santillan, 903 F.2d 1262, 1265-66 (9th Cir.

1990)).  Similarly, the Court's "fighting words doctrine" expressed in Chaplinsky removes the shield of the First Amendment from "statements 'which by their very utterance inflict injury or tend to incite an immediate breach of the peace.'"  Id. (quoting Chaplinsky, 315 U.S. at 572); see Cohen v. California, 403 U.S. 15, 20 (1971) (describing fighting words as expressions likely to provoke a violent reaction when directed to another).

Here, the provisions of Code § 18.2-423 specifically prohibit the burning of a cross "on the property of another, a highway or other public place," "with the intent of intimidating any person or group of persons."  Historically, a flaming cross is "inextricably linked . . . to sudden and precipitous violence – lynchings, shootings, whippings, mutilations, and home-burnings," a "connection . . . [with] forthcoming violence [that] is clear and direct."  T.B.D., 656 So. 2d at 481.  Hence, "a burning cross conveys ideas capable of eliciting powerful responses from those engaging in the conduct and those receiving the message."  State v. Ramsey, 430 S.E.2d 511, 514 (S.C. 1992).

Manifestly, the pernicious message of such conduct, a clear and direct expression of an intention to do one harm, constitutes a true threat envisioned by Watts, irrespective of racial, religious, ethnic or like characteristics peculiar to the victim.  Moreover, the attendant fear and intimidation subjects the victim to an immediate and calculated injury that

invites a breach of the peace, fighting words within the intendment of Chaplinsky. Thus, although such expressive conduct doubtless constitutes speech, the prohibition of which unavoidably implicates content, the message is beyond the protection of the First Amendment and appropriately subject to proscription by government.

Defendants' reliance upon Brandenburg v. Ohio, 395 U.S. 444 (1969), to support the contention that Code § 18.2-423 unconstitutionally prohibits "merely intimidating someone," at once ignores the well-established symbolism of the burning cross and misapplies Brandenburg. Brandenburg addressed a challenge to the constitutionality of Ohio's "Criminal Syndicalism statute," which proscribed, inter alia, the "'advocacy . . . [of] the duty, necessity, or propriety of crime, sabotage, violence or unlawful methods of terrorism as a means of accomplishing industrial or political reform.'" Id. at 444-45. Thus, the Brandenburg Court was concerned with the propriety of governmental restrictions on the "advocacy of the use of force or of law violation" in the context of a reform movement, an issue unrelated to the vile and malevolent expression contemplated by Code § 18.2-423. Id. at 447. Accordingly, the Brandenburg admonishment that states may "forbid or proscribe [such] advocacy" only if "directed to inciting or producing imminent lawless action and . . . likely to incite or produce

such action" does not similarly delimit proscribable threats and fighting words. Id.

Defendants' assertion that R.A.V. v. St. Paul "makes it clear . . . § 18.2-423 is unconstitutional" is, likewise, without merit. R.A.V. examined the constitutionality of a St. Paul, Minnesota ordinance, which provided, in pertinent part,

> Whoever places on public or private property a symbol, object, appellation, characterization or graffiti, including, but not limited to, a burning cross . . . which one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender commits disorderly conduct and shall be guilty of a misdemeanor.

R.A.V., 505 U.S. at 380 (citing Minn. Legis. Code § 292.02 (1990)). Unlike Code § 18.2-423, which proscribes cross burnings with the intent to intimidate anyone, the St. Paul ordinance prohibited such "speech solely on the basis of the subjects the speech addresses," race, color, creed, religion or gender. R.A.V., 505 U.S. at 381.

In declaring the enactment unconstitutional, the Supreme Court accepted the "authoritative statement" by the Minnesota Supreme Court "that the ordinance reaches only those expressions that constitute 'fighting words,'"[3] id. at 381, and reaffirmed the doctrine that "areas of speech can, consistently with the

---

[3] In overruling defendants' constitutional challenges in the instant prosecutions, Judge Rosenblatt also determined that Code § 18.2-243 regulated fighting words.

First Amendment, be regulated because of their constitutionally

proscribable content – (obscenity, defamation, [threats,

fighting words] etc.)."  Id. at 383 (emphasis in original).

However, the Court cautioned that such "categories of speech

[are not] entirely invisible to the Constitution" and cannot "be

made the vehicles for content discrimination unrelated to their

distinctively proscribable content."  Id. at 383-84.  Thus, when

"St. Paul . . . proscribed fighting words of whatever manner

that communicates messages of racial, gender or religious

intolerance," the city impermissibly engaged in "[s]electivity

[which] creates the possibility that [it] is seeking to handicap

the expression of particular ideas."  Id. at 394 (emphasis

added); see In re:  Steven S., 31 Cal. Rptr. 2d at 649 ("speech

and expressive conduct may be regulated [but] such regulation

may not discriminate within that category on the basis of

content"); T.B.D., 656 So. 2d at 481 (such regulation may not

"play[] favorites").

In contrast, Code § 18.2-423 regulates, without favor or

exception, conduct, which, despite elements of expression and

content, is unprotected by the First Amendment.[4]

---

[4] Post-R.A.V. decisions of other jurisdictions cited by
defendant in support of a different result involve statutes
substantially dissimilar from Code § 18.2-423.  See Pinette v.
Capitol Square Review and Advisory Bd., 874 F.Supp. 791 (S.D.
Ohio 1994) (statute established permit requirements to conduct
public assembly); State v. Shelton, 629 A.2d 753 (Md. 1993)
(statute proscribed cross burning to protect property owners
from unwanted fires and safeguard community from fires

Finally, defendant challenges Code § 18.2-423, first, as overbroad, regulating both protected and unprotected speech, and, secondly, as underinclusive, ignoring other modes of proscribable speech.  However, overbreadth assumes constitutional dimension only when "'there [is] a realistic danger that the statute . . . will significantly compromise recognized First Amendment protections of parties not before the court.'"  Parker v. Commonwealth, 24 Va. App. 681, 690, 485 S.E.2d 150, 154-55 (1997) (quoting Members of City Council of City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 800-01 (1984)).  The prohibition of Code § 18.2-423 is expressly limited to a person or persons burning a cross with the specific intent to intimidate another, a threat and fighting words unworthy of First Amendment guarantees.  Further, underinclusiveness is condemned by R.A.V. only if the result is content discrimination.  See R.A.V., 505 U.S. at 387.  Code § 18.2-423 criminalizes a long recognized, particularly virulent

_____

generally); State v. Vawter, 642 A.2d 349 (N.J. 1994) (statute proscribed messages based upon race, color, creed or religion); State v. Talley, 858 P.2d 217 (Wash. 1993) (statute proscribed certain conduct related to the race, color, religion, ancestry, natural origin, or mental, physical or sensory handicap of another).
    In contrast, jurisdictions examining the constitutionality of statutes more akin to Code § 18.2-423 are in accord with our conclusion.  See In re:  Steven S., 31 Cal. Rptr. 2d 644 (statute proscribed cross-burning intended to terrorize owner or occupant); T.B.D., 656 So. 2d 479 (statute proscribed burning of cross on property of another without permission).

and incendiary mode of proscribable expressive conduct, a prohibition free of content discrimination.

We, therefore, conclude that Code § 18.2-423 suffers from none of the several unconstitutional infirmities advanced by defendants.  The statute targets only expressive conduct undertaken with the intent to intimidate another, conduct clearly proscribable both as fighting words and a threat of violence.  The statute does not discriminate in its prohibition and is neither overbroad nor underinclusive.

Accordingly, we affirm the convictions.

<u>Affirmed.</u>