COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Willis and Clements
Argued at Alexandria, Virginia


DOUGLAS A. PARIS
                                    OPINION BY
v.   Record No. 2979-99-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                    MAY 8, 2001
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                 Jane Marum Roush, Judge

        Richard E. Gardiner for appellant.

        Shelly R. James, Assistant Attorney General
        (Mark L. Earley, Attorney General, on
        brief), for appellee.


     Douglas A. Paris (appellant) was convicted of two counts of

carnal knowledge. On appeal, he contends that Code

§ 18.2-361(A) violates Article 1, Section 1 of the Virginia

Constitution and that the trial judge erred by refusing his

proffered jury instruction on criminal intent. For the

following reasons, we affirm appellant's convictions.

                    I.   BACKGROUND

     Under familiar principles of appellate review, we examine

the evidence in the light most favorable to the Commonwealth,

the prevailing party below, granting to its evidence all

reasonable inferences fairly deducible therefrom. See Juares v.

Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).

Appellant's fifteen-year-old nephew (J.P.) came to Virginia to spend a part of his summer vacation with appellant. J.P. testified that between July 12 and July 28, 1998, he drank beer given to him by his uncle until he passed out on the couch. When J.P. awoke, his uncle was touching J.P.'s genitals and placing J.P.'s penis in his mouth. J.P. described several additional times during the course of his vacation when appellant entered his bedroom and performed oral sodomy upon him. J.P. testified that it was non-consensual,[1] but he did not report it because he was afraid of his parents' reaction and wanted to continue his vacation.

Appellant admitted that on at least two occasions, he performed oral sex on his nephew. However, he testified that he did so with the consent of J.P.[2]

Counsel for appellant proffered a jury instruction that included as an element of the offense that appellant knew his

---

[1] On direct examination, the Commonwealth's attorney asked J.P. what he did after the first time his uncle committed sodomy on him. J.P. responded, "I tried to go upstairs." On cross-examination, appellant's counsel asked J.P., "And when he woke you up those two or three times or four times, did you tell him to go away?" J.P. responded, "No, but I showed signs that I didn't want it to happen."

[2] We note that contrary to his testimony, in Exhibit 1, a letter written by appellant, he admits "[he] was completely and totally at fault" and "[he] let . . . thoughts . . . come out against someone I was responsible for and was charged to look after."

nephew did not consent "to his penis being in the mouth of the defendant."  The trial judge refused the jury instruction, stating it was an inaccurate statement of the law.  Appellant was convicted of two counts of carnal knowledge under Code § 18.2-361(A).

## II.  CONSTITUTIONALITY OF CODE § 18.2-361(A)

Appellant first contends Code § 18.2-361(A)[3] violates Article 1, Section 1 of the Virginia Constitution because consensual acts of sodomy are protected thereunder.  "Before considering these arguments, we note that generally, a litigant may challenge the constitutionality of a law only as it applies to him or her."  Coleman v. City of Richmond, 5 Va. App. 459, 463, 364 S.E.2d 239, 241-42 (1988) (citing Grosso v. Commonwealth, 177 Va. 830, 839, 13 S.E.2d 285, 288 (1941)). "That the statute may apply unconstitutionally to another is irrelevant.  One cannot raise third party rights."  Id. at 463, 364 S.E.2d at 242.  We therefore address appellant's argument only as it applies to his conduct in this case.

---

[3] Code § 18.2-361(A) provides in relevant part as follows:

> If any person carnally knows in any manner
> any brute animal, or carnally knows any male
> or female person by the anus or by or with
> the mouth, or voluntarily submits to such
> carnal knowledge, he or she shall be guilty
> of a Class 6 felony . . . .

- 3 -

A.  Scope

Article 1, Section 1 of the Constitution of Virginia

provides as follows:

> That all men are by nature equally free
> and independent and have certain inherent
> rights, of which, when they enter into a
> state of society, they cannot, by any
> compact, deprive or divest their posterity;
> namely, the enjoyment of life and liberty,
> with the means of acquiring and possessing
> property, and pursuing and obtaining
> happiness and safety.[4]

---

[4] The language of Article 1, Section 1 of the Virginia
Constitution is recognized as ideological language rather than
literal terms:

> George Mason drafted the first four sections
> of the Bill of Rights as a political
> philosophy to set Virginia properly on her
> new course.  His words have survived two
> hundred years with no substantial changes,
> as a statement of those ideals which the
> framers felt should guide the future of the
> Commonwealth.
>
> *       *       *       *       *       *       *
>
> In drafting the 1971 Constitution, the
> Commission on Constitutional Revision was
> aware of proposals that all language not
> judicially enforceable be eliminated from
> the Bill of Rights.  It recommended,
> however, that Mason's words be retained as a
> reminder of the Commonwealth's ideological
> heritage:  "Section 1 has often been
> discussed in decisions of the
> Virginia Supreme Court of Appeals, but its
> language, strictly speaking, is more
> exhoratory than enforceable."

A.E. Dick Howard, Commentaries on the Constitution of Virginia
58-65 (1974).

Appellant argues that his acts of oral sodomy on his fifteen-year-old nephew are protected by "the enjoyment of life and liberty" and "the pursuing and obtaining happiness" clauses outlined above. Additionally, he contends that the protections afforded to him by Article 1, Section 1 are broader than those privacy rights set out in the United States Constitution. We disagree.

"Our courts have consistently held that the protections afforded under the Virginia Constitution are co-extensive with those in the United States Constitution." Bennefield v. Commonwealth, 21 Va. App. 729, 739-40, 467 S.E.2d 306, 311 (1996). See also Lowe v. Commonwealth, 230 Va. 346, 348 n.1, 337 S.E.2d 273, 275 n.1 (1985) (explaining that protections under Virginia's Constitution and statutes are "substantially the same as those contained in the Fourth Amendment"); O'Mara v. Commonwealth, 33 Va. App. 525, 535 S.E.2d 175 (2000) (explaining that the protection of the right to free speech is co-extensive with federal constitutional protection). Because the rights guaranteed by the Virginia Constitution and the United States Constitution are co-extensive, we use the same analysis.

When the constitutionality of a statute is questioned, "the burden is on the challenger to prove the alleged constitutional defect." Woolfolk v. Commonwealth, 18 Va. App. 840, 848, 447

S.E.2d 530, 534 (1994). "Every act of the legislature is presumed to be constitutional, and the Constitution is to be given a liberal construction so as to sustain the enactment in question, if practicable." Moses v. Commonwealth, 27 Va. App. 293, 298-99, 498 S.E.2d 451, 454 (1998) (quoting Bosang v. Iron Belt Bldg. & Loan Ass'n, 96 Va. 119, 123, 30 S.E. 440, 441 (1898)). "It has long been established that every presumption is to be made in favor of an act of the legislature, and it is not to be declared unconstitutional except where it is clearly and plainly so. Courts uphold acts of the legislature when their constitutionality is debatable, and the burden is upon the assailing party to prove the claimed invalidity." Peery v. Virginia Bd. of Funeral Dir. and Embalmers, 203 Va. 161, 165, 123 S.E.2d 94, 97 (1961).

The seminal Virginia case interpreting the right to "life, liberty and the pursuit of happiness" under both the United States and Virginia Constitutions is Young v. Commonwealth, 101 Va. 853, 45 S.E. 327 (1903).

> The word "liberty" as used in the Constitution of the United States and the several states, has frequently been construed, and means more than mere freedom from restraint. It means not merely the right to go where one chooses, but to do such acts as he may judge best for his interest, not inconsistent with the equal rights of others; that is, to follow such

pursuits as may be best adapted to his faculties, and which will give him the highest enjoyment. The liberty mentioned is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling, and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purpose above mentioned. These are individual rights, formulated as such under the phrase "pursuit of happiness" in the Declaration of Independence, which begins with the fundamental proposition that all men are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty and the pursuit of happiness.

Id. at 862-63, 45 S.E. at 328-29 (emphasis added). In a further analysis of the scope of Article 1, Section 1 protections, the Virginia Supreme Court stated:

However, section 1, article I, of the Virginia Constitution is relied upon here as having been violated by the Virginia act [creation of the Milk Commission]. The challenged provisions of the Virginia and Federal Constitution are quite similar. Both guarantee to the citizen certain inherent rights, and, in our opinion, if the act violates the Federal Constitution it also will violate the Virginia Constitution. On the other hand, if it does not offend the Federal Constitution, then it will not offend the Virginia Constitution.

Reynolds v. Milk Comm., 163 Va. 957, 963, 179 S.E. 507, 509 (1935).

The United States and Virginia Constitutions provide for substantive due process which "protects those fundamental rights and liberties which are, objectively, deeply rooted in this [n]ation's history and tradition, . . . and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Washington v. Glucksburg, 521 U.S. 702, 720-21 (1997) (citations and internal quotations omitted). In addressing due process concerns, the Court looks to the "[n]ation's history, legal traditions, and practices." Id. at 710.

In Bowers v. Hardwick, 478 U.S. 186 (1985), the Supreme Court of the United States defined the types of interests that are protected under a due process analysis. They are rights without which "neither liberty nor justice would exist if [they] were sacrificed." Id. at 191-92. The Supreme Court has held that various privacy rights, such as marriage, use of contraceptives, abortion, and child-rearing, are fundamental rights protected by the Constitution. See Carey v. Population Servs. Int'l, 431 U.S. 678 (1977) (use of contraceptives); Roe v. Wade, 410 U.S. 113 (1973) (abortion); Loving v. Virginia, 388 U.S. 1 (1967) (marriage); Griswold v. Connecticut, 381 U.S. 479 (1965) (use of contraceptives by married persons); Prince v. Massachusetts, 321 U.S. 158 (1944) (family relationships);

Skinner v. Oklahoma, 316 U.S. 535 (1942) (procreation); Pierce v. Society of Sisters, 268 U.S. 510 (1925) (right to educate children).

In the instant case, appellant seeks to extend the right to privacy as well as the right to "happiness" to cover an individual who engages in oral sodomy, consensual or not, with a minor who is also a relative. Such conduct was not contemplated by the drafters of Article 1, Section 1 of the Virginia Constitution.

In Santillo v. Commonwealth, 30 Va. App. 470, 517 S.E.2d 733 (1999), we held that sodomy does not fall into any constitutionally protected area when the conduct involved a minor. The facts in this case parallel those of Santillo, except that Santillo dealt with an adult godfather and a minor female godchild and the instant case involves an adult uncle and minor nephew. The facts, reviewed in the light most favorable to the Commonwealth, establish in both cases that the minor victim was dependent on the perpetrator, did not explicitly agree with the conduct, and trusted the perpetrator, who was closely involved with the victim's family. On these facts, we hold that appellant's actions in the instant case are not within the parameters of any constitutionally protected area. As in Santillo, the appellant has failed to establish that Code § 18.2-361(A) is unconstitutional as applied to him.

- 9 -

III.  JURY INSTRUCTION

Appellant next contends the trial court erred in refusing his proposed jury instruction,[5] which required as an element of the offense "that the Commonwealth prove beyond a reasonable doubt that the defendant knew [the victim] did not consent." The trial court refused the instruction, finding it to be an inaccurate statement of the law.  We agree.

The language of Code § 18.2-361(A) requires proof only that appellant intended to "carnally know" his nephew by mouth.  The statute does not require proof that the defendant knew the victim did not consent.  The intentional commission of the act is the sole element that must be proven.

Appellant relies on Parrish v. Commonwealth, 81 Va. 1 (1884), for the proposition that all felony offenses implicitly require criminal intent even if the statute fails to state it. Code § 18.2-361(A) requires only that appellant intend the

_____

[5] Appellant's proposed jury instruction provided in part:

> The defendant is charged with a crime against nature.  The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> 1)  the penis of [J.P.] penetrated into the mouth of the defendant;
> 2)  [J.P.] did not consent to his penis being in the mouth of the defendant; and
> 3)  that defendant knew that [J.P.] did not consent to his penis being in the mouth of the defendant.

illegal act be committed.  That is the specific scienter required by <u>Parrish</u>.  The defendant's knowledge of the victim's lack of consent is not a part of the <u>mens</u> <u>rea</u> requirement. Thus, we hold the trial court properly refused the proffered jury instruction because it constituted an inaccurate statement of law.

For the foregoing reasons, we affirm appellant's convictions.

<u>Affirmed.</u>