JUSTICE LEMONS
delivered the opinion of the Court.
In these appeals, we consider whether Code § 18.2-423, which prohibits the burning of a cross with the intent of intimidating any person or group of persons, impermissibly infringes upon constitutionally protected speech. The case of Black v. Commonwealth involves a Ku Klux Klan rally on private property with the permission of the owner, where a cross was burned as a part of the ceremony. The companion cases of O’Mara v. Commonwealth and Elliott v. Commonwealth involve the attempted burning of a cross in the backyard of the home of James S. Jubilee (“Jubilee”), an African-American, without permission. We conclude that, despite the laudable intentions of the General Assembly to combat bigotry and racism, the selectivity of its statutory proscription is facially unconstitutional because it prohibits otherwise permitted speech solely on the basis of its content, and the statute is overbroad.
FACTS AND PROCEEDINGS BELOW
The prosecutions of Richard J. Elliott (“Elliott”) and Jonathan O’Mara (“O’Mara”) arose from a single incident in the City of Virginia Beach. On May 2, 1998, Elliott and O’Mara attended a party at the home of David Targee (“Targee”). Elliott told several people at the party that his neighbor, Jubilee, had complained about the discharge of firearms in Elliott’s backyard. In response, Elliott suggested they bum a cross in Jubilee’s yard.
Elliott, O’Mara, and Targee hastily constructed a crude wooden cross in Targee’s garage. While transporting the cross to the Jubilee home, Elliott referred to Jubilee with a racial epithet confirming Jubilee’s race. Upon arriving at Jubilee’s home, O’Mara put the cross in the ground and attempted to light it.
In addition to the epithet, the record is replete with references to Jubilee’s race. In the Commonwealth’s motion for joinder of defen *769 dants in the Elliott and O’Mara cases, it is stated: “Mr. James Jubilee is an African-American.” A fire investigator with the City of Virginia Beach testified that Targee knew the Jubilees were black before he participated in the cross burning. Throughout the O’Mara and Elliott prosecution, the Commonwealth referred to “burning a cross in a black family’s yard.” The questions of counsel and argument to the court are replete with references to race and racism.
Pursuant to a plea agreement, O’Mara pled guilty to attempted cross burning and conspiracy to commit cross burning, and was sentenced to 90 days in jail and a $2500 fine on each charge, with part of the time and fines suspended. Under the plea agreement, O’Mara retained the right to appeal the constitutionality of Virginia’s cross burning statute.
Elliott was also charged with attempted cross burning and conspiracy to commit cross burning. Upon his plea of not guilty, a jury found him guilty of attempted cross burning, but not guilty of conspiracy. Elliott was sentenced to 90 days in jail and was fined $2500.
O’Mara and Elliott appealed to the Court of Appeals, alleging that the Virginia cross burning statute violated the free speech clauses of both the United States and Virginia Constitutions. The Court of Appeals affirmed the convictions, holding that the statute “targets only expressive conduct undertaken with the intent to intimidate another, conduct clearly proscribable both as fighting words and a threat of violence.” O’Mara v. Commonwealth, 33 Va. App. 525, 536, 535 S.E.2d 175, 181 (2000).
In the third case reviewed, Barry Elton Black (“Black”) organized and led a Ku Klux Klan rally on August 22, 1998, in Carroll County. Following speeches filled with racial, ethnic, and religious bigotry, a cross approximately 25 to 30 feet tall was ignited.
Black was indicted for violating Virginia’s cross burning statute. He moved for dismissal of the indictment on the grounds that the statute was unconstitutional. The trial court denied Black’s motion and, upon conviction by a jury, Black was sentenced to pay a fine of $2500.
Black appealed his conviction, and the Court of Appeals affirmed the judgment of the trial court, “[f]or the reasons stated in O’Mara v. Commonwealth.” Black v. Commonwealth, Rec. No. 1581-99-3, December 19, 2000, at 1.
THE CROSS BURNING STATUTE
Code § 18.2-423, the cross burning statute, provides that:
*770 It shall be unlawful for any person or persons, with the intent of intimidating any person or group of persons, to bum, or cause to be burned, a cross on the property of another, a highway or other public place. Any person who shall violate any provision of this section shall be guilty of a Class 6 felony.
Any such burning of a cross shall be prima facie evidence of an intent to intimidate a person or group of persons.
Black[1] contends that the cross burning statute is unconstitutional because it engages in viewpoint and content discrimination and it fails to incorporate the standards articulated by the United States Supreme Court in Brandenburg v. Ohio, 395 U.S. 444 (1969), concerning incitement to, and likelihood of, imminent lawless action. Additionally, Black contends that the provision of the statute permitting an inference of intent to intimidate from the mere act of burning a cross, which excuses the Commonwealth from its proof requirement for the establishment of a prima facie case, further aggravates viewpoint and content discrimination and violates the limitations prescribed in Brandenburg.
The geometric configuration of a single vertical bar traversed by a single shorter horizontal bar has no unusual inherent properties. But its symbolic meaning is powerful. For Christians, the symbol of the cross evokes remembrance of the crucifixion of Christ. Unfortunately, such powerful symbols are often subject to misappropriation. As recognized by Justice Clarence Thomas in his concurring opinion in Capitol Square Review and Advisory Bd. v. Pinette, 515 U.S. 753, 770-71 (1995), the burning of a cross has acquired a specific meaning:
There is little doubt that the Klan’s main objective is to establish a racist white government in the United States. In Klan ceremony, the cross is a symbol of white supremacy and a tool for the intimidation and harassment of racial minorities, Catholics, Jews, Communists, and any other groups hated by the Klan. The cross is associated with the Klan not because of religious worship, but because of the Klan’s practice of cross burning. . . . The Klan simply has appropriated one of the most sacred of religious symbols as a symbol of hate.
*771 In 1952, in direct response to Ku Klux Klan activities in Virginia,[2] including incidents of cross burning, the General Assembly enacted the predecessor statute to the law at issue in these cases.[3] The cross burning statute was amended on several occasions, including an amendment expanding the sites where cross burning may not take place, and the addition of the inference of intent to intimidate from the mere act of burning a cross for the purposes of establishing a prima facie case under the statute.[4]
SELECTIVE REGULATION OF SPEECH BASED UPON CONTENT
It is well established that non-verbal, symbolic expression is “speech,” and is as fully protected by the First Amendment to the United States Constitution as more traditional means of communication. See, e.g., Tinker v. Des Moines Indep. Sch. Dist., 393 U.S. 503 (1969) (wearing of black arm bands by high school students as a protest against the war in Vietnam). However pernicious the expression may be, “[i]f there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.” Texas v. Johnson, 491 U.S. 397, 414 (1989). Any question about the constitutional infirmity of such selective proscription of speech was resolved by the United States Supreme Court in the case of R.A.V. v. City of St. Paul, 505 U.S. 377 (1992).
*772 The Virginia cross burning statute is analytically indistinguishable from the ordinance found unconstitutional in R.A.V. R.A.V. involved the prosecution of a teenager who, with several other minors, allegedly assembled a crudely made cross and burned the cross inside the fenced yard of a black family. Id. at 379. The City of St. Paul prosecuted under its Bias-Motivated Crime Ordinance, which provided:
Whoever places on public or private property a symbol, object, appellation, characterization or graffiti, including, but not limited to, a burning cross or Nazi swastika, which one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender commits disorderly conduct and shall be guilty of a misdemeanor.
St. Paul, Minn., Legis. Code § 292.02 (1990). The trial court held that the statute was unconstitutional, but the Minnesota Supreme Court reversed, construing the St. Paul ordinance as limited to conduct that amounts to “fighting words,” namely, “conduct that itself inflicts injury or tends to incite immediate violence . ...” In re Welfare of R.A.V., 464 N.W.2d 507, 510 (Minn. 1991). Accepting the limited construction placed upon the statute by the Minnesota Supreme Court, the United States Supreme Court held that, even if the expression reached by the ordinance was proscribable under the “fighting words” doctrine, the ordinance was “facially unconstitutional in that it prohibited] otherwise permitted speech solely on the basis of the subjects the speech addresses.” R.A.V., 505 U.S. at 381.
Noting that “[t]he First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed,” the Court observed that “[c]ontent-based regulations are presumptively invalid.” Id. at 382 (citations omitted). Exceptions to the rule include: obscenity (e.g., Roth v. United States, 354 U.S. 476 (1957)), defamation (e.g., Beauharnais v. Illinois, 343 U.S. 250 (1952)), and “fighting words” (e.g., Chaplinsky v. New Hampshire, 315 U.S. 568 (1942)). But simply because particular categories of speech may be regulated does not mean that such regulation may selectively discriminate on the basis of content. As the Court in R.A.V. stated:
And just as the power to proscribe particular speech on the basis of a noncontent element (e.g., noise) does not entail the *773 power to proscribe the same speech on the basis of a content element; so also, the power to proscribe it on the basis of one content element (e.g., obscenity) does not entail the power to proscribe it on the basis of other content elements.
R.A.V., 505 U.S. at 386.
The Commonwealth argues that the Virginia statute is neutral because “Code § 18.2-423 applies equally to anyone who bums a cross for the purpose of intimidating anyone.” The Commonwealth further dwells upon the phrase in R.A.V. which states that “threats of violence are outside the First Amendment.” 505 U.S. at 388. This quotation is incomplete and distorts the holding of R.A.V. While a statute of neutral application proscribing intimidation or threats may be permissible, a statute punishing intimidation or threats based only upon racial, religious, or some other selective content-focused category of otherwise protected speech violates the First Amendment. Id.
Emphasizing the point, the Court in R.A.V. noted:
Thus, the government may proscribe libel; but it may not make the further content discrimination of proscribing only libel critical of the government.
R.A.V., 505 U.S. at 384.
We have long held, for example, that nonverbal expressive activity can be banned because of the action it entails, but not because of the ideas it expresses - so that burning a flag in violation of an ordinance against outdoor fires could be punishable, whereas burning a flag in violation of an ordinance against dishonoring the flag is not.
Id. at 386.
A State might choose to prohibit only that obscenity which is the most patently offensive in its prurience - i.e., that which involves the most lascivious displays of sexual activity. But it may not prohibit, for example, only that obscenity which includes offensive political messages.
Id. at 388.
*774 And the Federal Government can criminalize only those threats of violence that are directed against the President, see 18 U.S.C. § 871 - since the reasons why threats of violence are outside the First Amendment (protecting individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur) have special force when applied to the person of the President.... But the Federal Government may not criminalize only those threats against the President that mention his policy on aid to inner cities.

Id.

R.A.V. makes it abundantly clear that, while certain areas of speech and expressive conduct may be subject to proscription, regulation within these areas must not discriminate based upon the content of the message.[5] In this case, the Commonwealth seeks to proscribe expressive conduct that is intimidating in nature, but selectively chooses only cross burning because of its distinctive message. As the Court in R.A.V. succintly stated: “the government may not regulate use based upon hostility - or favoritism - towards the underlying message expressed.” Id at 386.
While not specifically stating that “race, color, creed, religion or gender” is the subject of proscription, the absence of such language in the Virginia statute does not mask the motivating purpose behind the statutory prohibition of cross burning. The United States Supreme Court dealt with a similar question in the “flag burning” cases. In Texas v. Johnson, Johnson was prosecuted under a statute making it unlawful to intentionally or knowingly desecrate the *775 United States flag. “Desecrate” was defined as “deface, damage, or otherwise physically mistreat in a way that the actor knows will seriously offend one or more persons likely to observe or discover his action.” 491 U.S. at 400 (quoting Texas Penal Code Ann. § 42.09 (1989)). After the Supreme Court declared the Texas statute unconstitutional, Congress enacted the Flag Protection Act of 1989. In subsequent litigation concerning the Act, the government maintained that the absence of language in the Act focusing upon the content of the actor’s symbolic speech cured any constitutional problems. The Supreme Court disagreed in United States v. Eichman, 496 U.S. 310, 315 (1990) (internal quotations omitted), stating that, “[although the [statute] contains no explicit content-based limitation on the scope of prohibited conduct, it is nevertheless clear that the Government’s asserted interest is related to the suppression of free expression.”
Similarly, considering the historical and current context of cross burning, and the statute’s reliance on such context for the provision of an inference of intent to intimidate from the mere act of burning a cross, it is clear that the Commonwealth’s interest in enacting the cross burning statute is related to the suppression of free expression as well.
The virulent symbolism of cross burning has been discussed in so many judicial opinions that its subject and content as symbolic speech has been universally acknowledged. For example, the Supreme Court of South Carolina declared a statute[6] with operative language similar to ours unconstitutional and observed: “a burning cross historically conveys ideas capable of eliciting powerful responses from those engaging in the conduct and those receiving the message.” State v. Ramsey, 430 S.E.2d 511, 514 (S.C. 1993). The Court of Appeals of Maryland also declared a statute[7] with operative language similar to ours unconstitutional and observed:
*776 Those who openly burn crosses do so fully cognizant of the controversial racial and religious messages which such acts . impart. Historically, the Ku Klux Klan burned crosses to express hostility towards blacks and other groups it disfavored, and it is that idea which contemporary cross burners aim to perpetuate.
State v. Sheldon, 629 A.2d 753, 757 (Md. 1993).
The historical context for the passage of the Virginia cross burning statute is uncontrovertible. In an atmosphere of racial, ethnic, and religious intolerance, the General Assembly acted to combat a particular form of intimidating symbolic speech - the burning of a cross. It did not proscribe the burning of a circle or a square because no animating message is contained in such an act.
Initially, the cross burning proscription extended only to acts on property of another without permission. In 1968, the limitation concerning situs was removed, and in 1975, the addition of language establishing prima facie evidence of intent to intimidate from the mere act of burning a cross reaffirmed the legislative context of the statute. During oral argument, the Commonwealth maintained that the portion of the statute proscribing the burning of a cross had nothing to do with the motivation of the actor. When asked how the Commonwealth could justify the inference of intimidation provided in the last sentence of the statute, the Commonwealth relied upon the historical context of cross burning. The Commonwealth cannot have it both ways.
“SECONDARY EFFECTS”
As described above, the R.A.V. analysis begins with categories of speech that may be subject to regulation and holds that such regulation may not selectively discriminate on the basis of content. However, the Court in R.A.V. recognized that some selective regulation of constitutionally protected speech may be permissible if it is based upon the “secondary effects” of speech rather than its content. See Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986). In Renton, the ordinance under review proscribed the location of an adult motion picture theater within 1,000 feet of any residential zone, single- or multiple-family dwelling, church, park, or school. Because the ordinance did not ban adult theaters entirely, the Court held that the *777 ordinance is “properly analyzed as a form of time, place, and manner regulation.” Id. at 46.
The analysis used by the Court focused upon whether the regulation was directed at the content of the protected speech or at a legitimate area of government concern. Determining that the dominant motive of the ordinance was “to prevent crime, protect the city’s retail trade, maintain property values, and generally ‘protec[t] and preserv[e] the quality of [the city’s] neighborhoods, commercial districts, and the quality of urban life,’ ” the Court upheld the ordinance. Id. at 48. The Court held that the regulation in Renton was “aimed not at the content of the films shown at ‘adult motion picture theatres,’ but rather at the secondary effects of such theaters on the surrounding community.” Id. at 47. By contrast, the legislative history of the Virginia cross burning statute, the meaning afforded the expressive conduct, and the provision of prima facia evidence of intent to intimidate from the mere act of burning a cross, make it abundantly clear that Code § 18.2-423 is aimed at regulating content, not “secondary effects.”
OVERBREADTH ANALYSIS
As discussed herein, the majority opinion in R.A.V. holds that certain categories of speech may be regulated, but the government may not discriminate in its proscription within these categories on the basis of content. The concurring opinions in R.A.V. preferred a more traditional analysis confined to the question whether the ordinance suffered from overbreadth. As Justice White noted, St. Paul’s ordinance was unconstitutionally overbroad because:
Although the ordinance as construed reaches categories of speech that are constitutionally unprotected, it also criminalizes a substantial amount of expression that - however repugnant - is shielded by the First Amendment.
Id. at 413 (J. White, concurring). The Commonwealth’s cross burning statute is similarly defective.
It is not simply the prospect of conviction under the statute that renders it overbroad. The enhanced probability of prosecution under the statute chills the expression of protected speech sufficiently to render the statute overbroad. Virginia v. American Booksellers Ass’n, 484 U.S. 383, 392-93 (1988). Threat of prosecution under a criminal statute “tends to chill the exercise of First Amendment *778 rights.” North Carolina Right to Life, Inc. v. Bartlett, 168 F.3d 705, 710 (4th Cir. 1999). Self-censorship, “a harm that can be realized even without an active prosecution,” inhibits free speech. Vermont Right to Life Committee, Inc. v. Sorrell, 221 F.3d 376, 382 (2nd Cir. 2000).
Code § 18.2-423 provides in part that “any such burning of a cross shall be prima facie evidence of an intent to intimidate a person or group of persons.” Assuming that the act is done “on the property of another, a highway or other public place,”[8] the act of burning a cross alone, with no evidence of intent to intimidate, will nonetheless suffice for arrest and prosecution and will insulate the Commonwealth from a motion to strike the evidence at the end of its case-in-chief. That the trier of fact ultimately finds the actor not guilty of the offense is little consolation after arrest and prosecution for speech or expressive conduct that is otherwise protected. Arrest for, and prosecution of, otherwise protected speech, with no evidence of a critical element of the offense other than a statutorily supplied inference, chills free expression. Code § 18.2-423 sweeps within its ambit for arrest and prosecution, both protected and unprotected speech. As such it is overbroad.
BRANDENBURG ISSUES
In R.A.V., the Court acknowledged that the narrow construction placed upon the ordinance limited its application to “fighting words,” a proper category of proscription. Nonetheless, the ordinance was declared unconstitutional because of its selective application to only certain expressions of fighting words. Virginia’s cross burning statute suffers from the same infirmity. Because we hold that the statute impermissibly proscribes otherwise protected speech on the basis of content, and because the statute is overbroad, it is unnecessary to address the remaining challenges under Brandenburg.[9]
CONCLUSION
Under our system of government, people have the right to use symbols to communicate. They may patriotically wave the flag *779 or bum it in protest; they may reverently worship the cross or burn it as an expression of bigotry. Neutrally expressed statutes prohibiting vandalism, assault, and trespass may have vitality for the prosecution of particularly offensive conduct. While reasonable prohibitions upon time, place, and manner of speech, and statutes of neutral application may be enforced, government may not regulate speech based on hostility - or favoritism - towards the underlying message expressed.
A statute selectively addressed to the content of symbolic speech is not permitted under the First Amendment. Additionally, a statute that sweeps within its ambit both protected and unprotected speech is overbroad. Accordingly, we hold that Code § 18.2-423 violates the First Amendment of the United States Constitution. The convictions in each of these appeals will be vacated and the indictments will be dismissed.

Reversed and dismissed.

 Because of the similar constitutional challenges presented in these consolidated cases, our references to Black’s contentions shall be inclusive of those mounted by O’Mara and Elliott.

 See Police Aid Requested by Teacher: Cross is Burned in Negro’s Yard, Richmond News Leader, Jan. 21, 1949, at 19; Cross Fired Near Suffolk Stirs Probe: Burning Second in Past Week, Richmond Times-Dispatch, Jan. 23, 1949, § 2, at 1; Huge Cross is Burned on Hill Just South of Covington, Richmond Times-Dispatch, Apr. 14, 1950, at 6; Cross Burned at Manakin; Third in Area, Richmond Times-Dispatch, Feb. 26, 1951, at 4; Cross is Burned at Reedville Home, Richmond News Leader, Apr. 14, 1951, at 1; ‘State Might Well Consider’ Restrictions on Ku Klux Klan, Governor Battle Comments, Richmond Times-Dispatch, Feb. 6, 1952, at 7; Bill to Curb KKK Passed by the House, Richmond Times-Dispatch, Mar. 8, 1952, at 5; Name Rider Approved by House: Measure Now Goes to Battle, Richmond News Leader, Feb. 23, 1952, at 1; Governor Backs Curb on Ku Klux Activities, Richmond Times-Dispatch, Feb. 10, 1952, § 2, at 1.

 Code § 18.1-365 stated in pertinent part:
It shall be unlawful for any person or persons to place or cause to be placed on the property of another in the Commonwealth of Virginia a burning or a flaming cross or any manner of exhibit in which a burning or flaming cross, real or simulated, is a whole or a part, without first obtaining written permission of the owner or occupier of the premises so to do.
1952 Va. Acts ch. 483 § 2 at 777.

 See 1968 Va. Acts ch. 350 at 450; 1975 Va. Acts ch. 14 at 90, ch. 15 at 174.

 It is important to note that R.A. V did not interpret the First Amendment to forbid “under-inclusiveness.” To the contrary, the Court held that:
In our view, the First Amendment imposes not an “underinclusiveness” limitation but a “content discrimination” limitation upon a State’s prohibition of proscribable speech. There is no problem whatever, for example, with a State’s prohibiting obscenity (and other forms of proscribable expression) only in certain media or markets, for although that prohibition would be “underinclusive,” it would not discriminate on the basis of content.
Id. at 387. Of course, the subjects of the proscription expressly stated in the St. Paul ordinance were symbols and words, including a burning cross or a Nazi swastika, evoking “anger, alarm or resentment in others on the basis of race, color, creed, religion or gender.” As the Court noted, excluded from proscription was identical behavior with a different subject, such as “political affiliation, union membership, or homosexuality.” Id. at 391. The infirmity addressed in R.A.V., as in the cases before this Court, was not “underinclusiveness;” rather, it was the selective discrimination in the ordinance based upon content.

 S.C. Code Ann. § 16-7-120 (1985) provided:
It shall be unlawful for any person to place or cause to be placed in a public place in the State a burning or flaming cross or any manner of exhibit in which a burning or flaming cross, real or simulated, is the whole or a part or to place or cause to be placed on the property of another in the State a burning or flaming cross or any manner of exhibit in which a burning or flaming cross, real or simulated, is the whole or a part, without first obtaining written permission of the owner or occupier of the premises so to do.

 Md. Ann. Code art. 27, § 10A (1957, 1992 Repl. Vol.) provided in pertinent part:
It shall be unlawful for any person or persons to burn or cause to be burned any cross or other religious symbol upon any private or public property within this State without the express consent of the owner of such property and without first giving *776 notice to the fire department which services the area in which such burning is to take place.

 The Virginia statute prohibits cross burning “on the property of another, a highway or other public place.” Remarkably, it sweeps within its prohibition the act “on the property of another” with or without permission.

 Additionally, because we resolve these questions under the First Amendment to the United States Constitution, it is unnecessary to address Elliott’s and O’Mara’s additional argument that Article I, § 12 of the Virginia Constitution is also violated.