**John and Patti DEMMON, et al., Plaintiffs,**

v.

**LOUDOUN COUNTY PUBLIC SCHOOLS, et al., Defendants.**

**No. CIV.A. 03–365–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Aug. 28, 2003.

Charles Douglas Welty, Arlington, VA, for Plaintiffs.

E. William Chapman, Kelly A. Sherrill, Reed Smith, LLP, Leesburg, VA, for Defendants.

## MEMORANDUM OPINION

CACHERIS, District Judge.

At issue in this case is whether a public school violates the Free Speech, Establishment, and Free Exercise Clauses of the United States and Virginia Constitutions when it removes bricks inscribed with the Latin Cross, purchased by parents and relatives of school students and graduates, from the school's "walkway of fame," located on school property.

### I. Background

Beginning in 2001, a parent group associated with Loudoun County Public Schools, Parents Associated With the School ("PAWS"), initiated a fund-raising project through which PAWS solicited sales of engraved bricks that would create a "walkway of fame" on Potomac Falls High School property ("PFHS" or the "High School"). The bricks were to cover a sidewalk area in front of the High School, between the flagpoles. Students may walk over the bricks to get to the school, but can also easily avoid them. PAWS solicited parents and family members of students to purchase bricks, which could be inscribed with a personalized message and/or certain symbols. Twenty-four symbols were available to be inscribed on the bricks, mainly symbols identified with school-sponsored extra-curricular activities (i.e., soccer, volleyball, music, and drama). The only religious symbol available was the Latin Cross.[1]

In February 2003, Defendant E. Wayne Griffith ("Griffith"), the Principal of

---

1. The Latin Cross has been described by courts as a cross where the base stem is longer than the other three arms of the cross. *Harris v. City of Zion,* 927 F.2d 1401 (7th Cir.1991). Both parties to this case agree that the Latin Cross is a symbol of Christianity.

PFHS, informed those persons who had purchased bricks inscribed with the Latin Cross that such bricks had been removed from the "walkway of fame" due to potential legal problems associated with allowing religious symbols on school property. Replacement bricks, containing only the student's name and year of graduation, were to be provided by the School. Purchasers were also refunded the additional five dollars they had paid to have the symbol appear on their bricks.

Plaintiffs John and Patti Demmon ("the Demmons"), Roger Marcum ("Marcum"), Terri Nickerson ("Nickerson"), and Christa Robinson ("Robinson") are parents of current or former PFHS students who purchased bricks inscribed with the Latin Cross through the PAWS fundraiser. Those bricks were all removed in February 2003. Plaintiffs Alan and Karen Hansen and their son Jonathan Hansen (collectively, the "Hansens"), would like to purchase a brick with Jonathan's name and a Latin Cross on it during the upcoming 2003–04 school year. The Latin Cross is no longer permitted to be inscribed on the bricks.

On March 24, 2003, Plaintiffs filed suit in this Court against Defendants Loudoun County Public Schools and the Loudoun County School Board, the governing body of PFHS, (collectively, the "School"); Dr. Edgar Hatrick ("Hatrick"), the Superintendent of the School; Griffith; and certain John Doe Individuals, Governmental Entities, and Corporations. Plaintiffs allege that Defendants' conduct in removing the bricks inscribed with the Latin Cross and eliminating the Latin Cross as an available symbol for inscription on the bricks was in violation of 42 U.S.C. § 1983, specifically that, under color of state law, Defendants violated Plaintiffs' rights under the (I) Free Speech Clause of the United States Constitution; (II) Free Speech Clause of the Virginia Constitution; (III) Establishment Clause of the United States Constitution; (IV) Establishment Clause of the Virginia Constitution; (V) Free Exercise Clause of the United States Constitution; and (VI) Free Exercise Clause of the Virginia Constitution. Plaintiffs seek declaratory relief and immediate return of the bricks inscribed with the Latin Cross to the "walkway of fame." On April 18, 2003, the named Defendants filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). That motion is currently before the Court.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States,* 30 F.3d 518, 522 (4th Cir.1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States,* 947 F.2d 1169, 1177 (4th Cir.1991) (citations omitted); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.* In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8. However, the presence of "a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion." *Migdal v. Rowe Price–Fleming Int'l,* 248 F.3d 321, 326 (4th Cir.2001) (quoting

*Young v. City of Mount Ranier,* 238 F.3d 567, 577 (4th Cir.2001)).

## III. Analysis

As an initial matter, Defendants argue that Loudoun County Public Schools should be dismissed as a Defendant in favor of the governing body of the Schools, the Loudoun County School Board. At oral argument on June 13, 2003, Plaintiffs indicated that they did not object to substituting the School Board for the Schools. Accordingly, the Court will consider Plaintiffs' claims only against the School Board, Superintendent Hatrick, and Principal Griffith (collectively, "Defendants").

In the Complaint, Plaintiffs allege parallel violations of the United States and Virginia Constitutions. Virginia courts "have consistently held that the protections afforded under the Virginia Constitution are co-extensive with those in the United States Constitution." *Bennefield v. Commonwealth,* 21 Va.App. 729, 467 S.E.2d 306, 311 (1996) (citations omitted). Notably, the Supreme Court of Virginia has found the Establishment Clause of the Virginia Constitution, Article I, Section 16, to be a "parallel provision" to the Establishment Clause of the United States Constitution, and in interpreting the Virginia provision Virginia courts have "always been informed by the United States Supreme Court Establishment Clause jurisprudence in construction of Article I, § 16." *Virginia College Bldg. Auth. v. Lynn,* 260 Va. 608, 626, 538 S.E.2d 682 (2000). Similarly, the language of the Virginia Constitution in regard to the right to free speech is strikingly similar to the Free Speech Clause of the United States Constitution. Because the relevant protections under the United States and Virginia Constitutions are co-extensive, the Court will examine Plaintiffs' claims under both Constitutions simultaneously, as governed by the same law.

Defendants have moved for dismissal of Plaintiffs' claims under all three theories of liability: violation of the Free Speech Clause, the Establishment Clause, and the Free Exercise Clause. Each will be addressed in turn.

### A. Violation of the Free Speech Clause

Plaintiffs assert that their right to free speech was violated by Defendants, who discriminated against Plaintiffs' speech on the basis of its religious content by removing the bricks engraved with the Latin Cross. The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech[.]" U.S. Const. amend. I; *see also* Va. Const. art. I, § 12 ("the General Assembly shall not pass any law abridging the freedom of speech...."). Despite the rather absolute nature of the language in the First Amendment, courts have recognized certain situations where schools may permissibly regulate speech. *See, e.g., Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988); *Bethel Sch. Dist. v. Fraser,* 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Defendants argue that their actions in this case were permissible on two grounds: (i) the "walkway of fame" does not constitute a public forum, or, alternatively, (ii) if the walkway is deemed a public forum, Defendants had a compelling interest in regulating the content of the speech thereon.

Defendants argue that the "walkway of fame" was not intended for use by the general public, but rather was designed as a locale for persons affiliated with the school to recognize students special to them. Accordingly, Defendants argue that the walkway is not a public forum, but is instead a forum for school-sponsored speech such that the school has the duty

and obligation to regulate the speech thereon.

■ In the Complaint, Plaintiffs assert that the walkway is a designated public forum, or, alternatively, a limited public forum. Compl. ¶ 4.2, 5.2. A school district, like any other private owner of property, "may legally preserve the property under its control for the use to which it is dedicated." *Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384, 390, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993) (citations omitted). The degree of control the school district may exercise over expression on its property, however, depends upon the nature of the forum. *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001) (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)). Where an area is intentionally opened for indiscriminate public use for expressive activity, it becomes a designated public forum. *Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.*, 473 U.S. 788, 802, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985); *Lamb's Chapel*, 508 U.S. at 392, 113 S.Ct. 2141. In designated public forums, the owner may regulate the expression therein only to the extent permissible in a traditional open forum: reasonable time, place, and manner restrictions are permissible, whereas content-based restrictions must be narrowly drawn to serve a compelling state interest. *Perry Educ. Ass'n*, 460

U.S. at 46, 103 S.Ct. 948 (citing *Widmar v. Vincent*, 454 U.S. 263, 269–70, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981)). A property owner need not, however, open its property for indiscriminate public expression. Instead, the district may reserve its forum "for certain groups or for the discussion of certain topics." *Good News Club*, 533 U.S. at 106, 121 S.Ct. 2093 (quoting *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995)). Where a limited public forum exists, the owner may restrict access thereto "based on subject matter and identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Lamb's Chapel*, 508 U.S. at 393, 113 S.Ct. 2141 (quoting *Cornelius*, 473 U.S. 788, 806, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)).

■ The brochure advertising the "walkway of fame" contemplates that purchasers of the bricks would be the families of students, who would use the inscriptions to honor their students, coaches, and/or sponsors. (Compl.Ex. A.) Although it is clear that the school intended to open the walkway to public speech to a certain extent, the Court does not find that the school intended for the walkway to be an open forum for indiscriminate public expression.[2] Accordingly, for the purposes of the motion to dismiss, the Court will consider the "walkway of fame" to be a limited public forum.[3]

**2.** After the hearing on the motion to dismiss, Defendants were made aware of a brick in the walkway inscribed with "GAM Printers, Inc.," a corporation not associated with the school. On June 24, 2003, Defendants removed the brick from the walkway as not in keeping with the purpose of the walkway. Deft. (Motion to Amend. p. 2–3.) Although the timing of such removal raises questions as to whether such action was taken for litigation purposes, the Court does not find that the existence of one brick inscribed with a commercial message, subsequently removed,

changes the character of the walkway to a designated public forum.

**3.** Defendants argue that the bricks constitute school-sponsored speech, that is, "students, parents, and members of the public might reasonably perceive [the speech] to bear the imprimatur of the school." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 271, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988). School-sponsored speech may be restricted by the school so long as the restrictions are "reasonably related to legitimate pedagogical con-

■ Having found the "walkway of fame" to be a limited public forum, the Court must determine whether Defendants' decision to discontinue the availability of the Latin Cross as a symbol and remove the bricks containing the Latin Cross was "reasonable in light of the purpose served by the forum and viewpoint neutral." *Lamb's Chapel,* 508 U.S. at 393, 113 S.Ct. 2141. "Although a speaker may be excluded from a nonpublic forum if he wishes to address a topic not encompassed within the purpose of the forum, or if he is not a member of the class of speakers for whose especial benefit the forum was created, the government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject." *Cornelius,* 473 U.S. at 806, 105 S.Ct. 3439 (internal citations omitted).

The reasonableness of speech restrictions must be considered in light of the purpose of the forum in which the speech is expressed. *Lamb's Chapel,* 508 U.S. at 393, 113 S.Ct. 2141. The brochure soliciting the purchase of bricks for the walkway at PFHS states that "[p]ersonalized bricks are a unique gift to recognize your children, your family, your grandchildren, coaches, sponsors, and/or teachers." (Compl.Ex. A.) Parties are encouraged to "[h]elp your school and create a lasting memory at the same time!!" *Id.* The parties appear to agree that the general purpose of the walkway is to commemorate current and former school community members as well as to raise money for PAWS, the parent group associated with the school. The parties differ, however, as to their interpretation of the purpose of the symbols on the bricks. Defendants assert that the symbols were designed to showcase the school-sponsored activities with which the honoree was affiliated, not to provide a forum for discussion or endorsement of certain religions. Plaintiffs' arguments construe the symbols as a means to express something of importance to the honoree.

Construing the Complaint in the light most favorable to Plaintiffs, as the Court must at this stage in the proceedings, the Court will evaluate the reasonableness of the regulation assuming that the purpose of allowing the symbols to be inscribed on the bricks was to signify an interest of the honoree not limited to his/her time at PFHS. This purpose is supported by the inclusion of two symbols, in addition to the symbols for school-sponsored activities and the Latin Cross, which appear to be symbols of activities or interests not directly related to the school: the tree (possibly symbolizing an interest in environmentalism or farming) and the horseshoe (likely

---

cerns." *Id.* at 273, 108 S.Ct. 562. Notably, this standard is identical to that regarding the permissibility of restrictions on speech in limited public forums. The circuits are split as to whether restrictions on school-sponsored speech must be viewpoint neutral, as must restrictions on speech in limited public forums. *Compare Fleming v. Jefferson County Sch. Dist.,* 298 F.3d 918, 926 (10th Cir.2002) (no requirement of viewpoint neutrality); *C.H. ex rel. Z.H. v. Oliva,* 195 F.3d 167, 172–73 (3d Cir.1999) (same); *Ward v. Hickey,* 996 F.2d 448, 454 (1st Cir.1993) (same), *with Planned Parenthood of Southern Nevada v. Clark County Sch. Dist.,* 941 F.2d 817, 829 (9th Cir.1991) (requiring viewpoint neutrali-

ty); *Kincaid v. Gibson,* 191 F.3d 719, 727 (6th Cir.1999) (noting that the *Hazelwood* court noted that viewpoint-based restrictions were part of its analysis); *Searcey v. Harris,* 888 F.2d 1314, 1319 n. 7 (11th Cir.1989) (requiring viewpoint neutrality). For the purposes of this motion, the Court will assume, without deciding, that viewpoint neutrality is required for restrictions on school-sponsored speech. Accordingly, the analysis regarding the permissibility of restrictions on school-sponsored speech is identical to that for speech in a limited public forum. Therefore, the Court will address the permissibility of Defendants' actions in this case under limited public forum jurisprudence.

symbolizing equestrian activities). (Compl.Ex. A.)

Defendants argue that the ban imposed on the use of the Latin Cross is reasonable because had the Latin Cross been included with symbols of school-sponsored activities such inclusion may have indicated that the School endorsed Christianity. Defendants argue that they discontinued the Latin Cross symbol to ensure that students and members of the school-community were not being taught that Christianity is the only religion that the school endorses, or that belief in other religions or no religion at all was disapproved. The order form did not allow persons to select any other religious symbol, except by submission to and approval of Principal Griffith. (Compl.Ex. A.) Given the exclusive availability of the Latin Cross, there may be a basis for a finding that barring display of the Latin Cross was reasonably related to the purpose of the forum. The Court need not decide the issue, however, because not only must the restriction be reasonably related to the purpose of the forum, but it must also be viewpoint neutral.

As the Supreme Court noted in *Good News Club,* "speech discussing otherwise permissible subjects cannot be excluded from a limited public forum on the ground that the subject is discussed from a religious viewpoint." *Good News Club,* 533 U.S. at 112, 121 S.Ct. 2093. Construing the purpose of the symbols as memorials of activities or interests of importance to the honorees, Plaintiffs have alleged facts sufficient to support a claim that the Latin Cross symbol has been impermissibly excluded solely on the basis of its religious message.[4]

Defendants argue that even if their actions would violate the Free Speech clause as a form of viewpoint discrimination, there is no violation in this case because Defendants' actions were necessary to avoid violation of the Establishment Clause. It is not clear from Supreme Court jurisprudence whether a school district's interest in avoiding an Establishment Clause violation justifies viewpoint discrimination. *Good News Club,* 533 U.S. at 113, 121 S.Ct. 2093 (citing *Lamb's Chapel,* 508 U.S. at 394–95, 113 S.Ct. 2141). Furthermore, Defendants' argument that it would have been in violation of the Establishment Clause is largely based on the fact that Defendants allowed only the Latin Cross, not symbols of other religions (i.e., the Star of David) to be engraved on the bricks. Given the lack of authority supporting the interest in avoiding an Establishment Clause violation as justification for Defendants' actions, and given the fact that there may have been other avenues through which the School could have avoided such a violation, the Court does not find that Defendants' asserted justification bars Plaintiffs' claims as a matter of law. Accordingly, the Court will deny Defendants' motion to dismiss Plaintiffs' free speech claims in Counts I and II of the Complaint.

## B. Violation of the Establishment Clause

Plaintiffs argue that Defendants' conduct in refusing to allow Plaintiffs to place religious symbols alongside other symbols on bricks in the walkway violates the Establishment Clause by (1) sending a message of exclusion and disfavor of a specific religion; (2) exhibiting hostility to religion;

---

**4.** The Court's finding today is expressly based on the construction of the purpose of the symbols of the walkway being to express an interest dear to the honoree. After further factual development, it may become clear that the School wished only to allow expression of school-sponsored interests. Examining Defendants' actions in light of that purpose would dramatically change the analysis both as to reasonableness and viewpoint neutrality.

and (3) excessively entangling the School with religion by creating an approval process that hinges on the degree of religious speech proposed symbols express. (Compl.¶ 6.2, 6.3., 6.4, 7.2, 7.3, 7.4.) Defendants argue that Plaintiffs have failed to set forth sufficient facts upon which to establish an Establishment Clause violation.

█ In analyzing alleged violations of the Establishment Clause, the Fourth Circuit applies the test first set forth by the Supreme Court in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). *See Ehlers–Renzi v. Connelly Sch. of the Holy Child, Inc.*, 224 F.3d 283, 288 (2000). Under *Lemon*, in order to withstand a challenge under the Establishment Clause a policy must (1) have a secular legislative purpose; (2) have the principal or primary effect of neither advancing nor inhibiting religion; and (3) not foster excessive governmental entanglement with religion. *Lemon*, 403 U.S. at 612–13, 91 S.Ct. 2105. Plaintiffs assert that by removing bricks inscribed with the Latin Cross Defendants have inhibited religion such that the second prong of the *Lemon* test cannot be met.

While the Establishment Clause is often invoked to protect against the state's endorsement of religion over non-religion, it is equally applicable to claims that the state action is "hostile" to religion. *See School Dist. of Abington Township v. Schempp*, 374 U.S. 203, 225, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963)("the State may not establish a 'religion of secularism' in the sense of affirmatively opposing or showing hostility to religion, thus 'preferring those who believe in no religion over those who do believe'"(quoting *Zorach v. Clauson*, 343 U.S. 306, 314, 72 S.Ct. 679, 96 L.Ed. 954 (1952))). Under the policy set forth by Defendants, brick purchasers may inscribe bricks with symbols of extra-curricular activities that are important to the honoree,

but not religious symbols. Defendants argue that such policy is necessary to ensure that it does not appear that the School endorses Christianity by allowing the Latin Cross to be inscribed on bricks in the walkway while other religions are not represented. The fact that the School likely would have engaged in impermissible viewpoint regulation by not allowing bricks to be inscribed with other religious symbols, if requested, does not automatically validate the School's decision to not allow inscription of any religious symbols. As the Supreme Court noted, "the guarantee of neutrality is respected, not offended, when the government, following neutral criteria and evenhanded policies, extends benefits to recipients whose ideologies and viewpoints, including religious ones, are broad and diverse." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 839, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995) (citations omitted).

█ If the purpose of the walkway is to commemorate honorees in their involvement in school-sponsored activities, the limit on symbols may be appropriate. If, however, the purpose of the walkway is not so narrowly construed, exclusion of any religious symbol may have the impermissible effect of inhibiting religion. The Establishment Clause is not violated by allowing religious groups access to school property on the same terms as non-religious groups. *See, e.g., Lamb's Chapel*, 508 U.S. at 395, 113 S.Ct. 2141; *Widmar*, 454 U.S. at 271–72, 102 S.Ct. 269. On that reasoning, Defendants' assertion that it was required to eliminate any religious symbols from the bricks on the basis of the Establishment Clause is not especially compelling. Accordingly, reading the Complaint in the light most favorable to Plaintiffs, as the Court must at this stage in the proceedings, the Court finds that Plaintiffs have alleged facts sufficient to support an Establishment Clause violation.

Accordingly, Defendants' motion to dismiss the Establishment Clause claims in Counts III and IV of the Complaint will be denied.

### C. Violation of the Free Exercise Clause

In Counts V and VI of the Complaint, Plaintiffs allege that Defendants infringed Plaintiffs' First Amendment right to the free exercise of religion by refusing to allow Plaintiffs to show the importance of religion in their lives and their religious beliefs by purchasing bricks inscribed with religious symbols for the walkway of fame.

The First Amendment provides that the government shall not interfere with an individual's "free exercise" of the religion of his or her choosing. U.S. Const. amend. I. The free exercise of religion means "first and foremost, the right to believe and profess whatever religious doctrine one desires." *Employment Division, Dep't of Human Resources of Oregon v. Smith*, 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). Furthermore, the performance of or abstention from certain physical acts may involve the exercise of religion. *Id.* Defendants argue that in this case, however, Plaintiffs are unable to establish that Defendants' actions prevented them from engaging in the exercise of religion.

■ In the Complaint, Plaintiffs allege that they sought to exercise their religion by "displaying religious symbols and/or messages on bricks to be placed with other bricks in Potomac Falls High School's 'walkway of fame.'" (Compl.¶ 8.3, 8.4.) The free exercise clause prohibits the government from imposing special disabilities on the basis of religious status or beliefs.

*McDaniel v. Paty*, 435 U.S. 618, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978). Plaintiffs assert that their inability to include a religious symbol on their bricks amounts to an impermissible special disability placed on Plaintiffs on the basis of their religion, given that persons who are involved in secular extracurricular activities are permitted to include symbols of such activities on their bricks.

■ Courts have found that the government has imposed a "special disability" in cases where laws forbade members of the clergy from becoming public officials, *McDaniel*, 435 U.S. 618, 98 S.Ct. 1322, prohibited the ritual slaughter of animals, *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993), and where a state agency refused to grant a corporate charter to a church, *Falwell v. Miller*, 203 F.Supp.2d 624 (W.D.Va.2002). In this case, there exists no similar special disability on Plaintiffs. Plaintiffs are not subject to any unique prohibition or differential treatment because of their status as Christians; no person is permitted to inscribe a religious message or symbol on bricks to be placed in the walkway of fame. Bricks purchased by Plaintiffs and other Christians are subject to the same review process and standards as are bricks purchased by followers of other religions or no religion. Accordingly, the Court finds that Plaintiffs have failed to establish that Defendants have imposed a special disability on them on the basis of their religion and will, accordingly, grant Defendants' motion to dismiss Counts V and VI of the Complaint.[5]

---

5. The Free Exercise Clause also forbids governmental entities from, *inter alia*, compelling affirmation of religious belief, *Torcaso v. Watkins*, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961), punishing the expression of religious doctrines it believes to be false, *United States v. Ballard*, 322 U.S. 78, 86–88, 64 S.Ct. 882, 88 L.Ed. 1148 (1944), or lending its

power to one side or the other in controversies over religious authority or dogma, *see Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). The Court need not, however, examine any other construction of the free exercise

## IV. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Defendants' motion to dismiss. The Court will deny Defendants' motion to dismiss Counts I and II of the Complaint (violation of the Free Speech Clause) and Counts III and IV of the Complaint (violation of the Establishment Clause), and will grant Defendants' motion as to Counts V and VI of the Complaint (violation of the Free Exercise Clause). An appropriate order will issue.

## *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, it is hereby ORDERED that:

(1) Defendants' Motion to Dismiss the Complaint is GRANTED in part and DENIED in part. Defendants' Motion to Dismiss Counts I, II, III, and IV of the Complaint is DENIED; Defendants' Motion to Dismiss Counts V and VI of the Complaint is GRANTED; Defendants shall file their answer within 10 days of entry of this order.

(2) pursuant to the representations of the parties in open Court on Friday, June 13, 2003, Loudoun County Public Schools is DISMISSED as a Defendant; and

(3) the Clerk of the Court shall forward copies of this Order and the accompanying Memorandum Opinion to all counsel of record.

clause as Plaintiffs allege only that Defendants violated their free exercise rights on the basis of imposition of a special disability on the basis of their faith.